**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DINESH BANURS, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> LI AUTO INC., XIANG LI, TIE LI, and DONGHUI MA, <br><br> Defendants. | Case No. 1:24-cv-03470-VMS |
| SAQIB CHAUDHARY, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> LI AUTO INC., XIANG LI, TIE LI, and DONGHUI MA, <br><br> Defendants. | Case No. 1:24-cv-03725-FB-VMS |

**CHARLES HANNA'S MEMORANDUM OF LAW IN OPPOSITION TO COMPETING MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL**

**TABLE OF CONTENTS**

SUMMARY OF ARGUMENT ........................................................................................................ 1

ARGUMENT .................................................................................................................................. 6

    I.    WEE FAILED TO DEMONSTRATE THAT HE MEETS THE ADEQUACY AND TYPICALITY REQUIREMENTS OF RULE 23 ......................................... 6

    II.    HANNA HAS THE LARGEST LOSSES BASED ON THE ONLY PLAUSIBLE CLASS PERIOD ALLEGED IN THE *BANURS* ACTION .......... 10

    III.    HANNA'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL SHOULD BE APPROVED .................................................................................... 13

CONCLUSION ............................................................................................................................. 15

**TABLE OF AUTHORITIES**

**Cases**                                                                                              **Page(s)**

*Blank v. Jacobs*,
No. 03-CV-2111 (JS)(MLO), 2009 WL 3233037 (E.D.N.Y. Sept. 30, 2009) .........................9

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001).................................................................................................6

*In re Centerline Holding Co. Sec. Litig.*,
No. 08 Civ. 505(SAS), 2008 WL 1959799 (S.D.N.Y. May 5, 2008)......................................5

*Faris v. Longtop Fin. Techs. Ltd.*,
No. 11 Civ. 3658(SAS), 2011 WL 4597553 (S.D.N.Y. Oct. 4, 2011) ....................................9

*In re IMAX Sec. Litig.*,
272 F.R.D. 138 (S.D.N.Y. 2010) ...........................................................................................9

*Karp v. Diebold Nixdorf, Incorporated*,
No. 19 Civ. 6180 (LAP), 2019 WL 6619351 (S.D.N.Y. Dec. 5, 2019) ..................................6

*Nayani v. LifeStance Health Grp., Inc.*,
641 F. Supp. 3d 57 (S.D.N.Y. 2022)......................................................................................8

*Perez v. HEXO Corp.*,
No. 19 Civ. 10965 (NRB), 2020 WL 905753 (S.D.N.Y. Feb. 25, 2020) ................................7

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co., Inc.*,
229 F.R.D. 395 (S.D.N.Y. 2004) ...........................................................................................6

*Reitan v. China Mobile Games & Entm't Grp., Ltd.*,
68 F. Supp. 3d 390 (S.D.N.Y. 2014)....................................................................................14

*Schaffer v. Horizon Pharma Plc*,
No. 16-CV-1763 (JMF), 2016 WL 3566238 (S.D.N.Y. June 27, 2016) .................................6

*Villare v. ABIOMED, Inc.*,
No. 19 Civ. 7319 (ER), 2020 WL 3497285 (S.D.N.Y. June 29, 2020) ..............................5, 10

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B) ...................................................................................................1, 6, 13

**Other Authorities**

FINRA Rule 2241, Research Analyst and Research Reports ........................................................9

Anne Cullen, More Judges Are Demanding Diversity Among Class Counsel, Law360 (July 16, 2020) ...............................................................................................................15

Ralph Chapoco, Calls for Lawyer Diversity Spread to Complex Class Litigation, Bloomberg Law (July 30, 2020) .............................................................................................15

Lead Plaintiff movant Charles Hanna ("Hanna") respectfully submits this memorandum of law in opposition to the competing motion to be appointed Lead Plaintiff and in further support of its motion for an Order: (1) consolidating the above-captioned, related actions ("Actions");[1] (2) appointing Hanna as Lead Plaintiff; (3) approving Hanna's selection of the law firm of Faruqi & Faruqi, LLP (the "Faruqi Firm") as Lead Counsel; and (4) granting such further relief as the Court may deem just and proper.[2]

## SUMMARY OF ARGUMENT

Hanna is entitled to appointment as Lead Plaintiff under the PSLRA because he is the only movant asserting the largest financial interest in this litigation who also satisfies the PSLRA's Rule 23 requirements. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) (requiring the appointment of the movant who "has the largest financial interest" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure"). Hanna has LIFO losses of approximately $481,163.12 in connection with class period purchases of Li Auto Inc. ("Li Auto" or the "Company") securities in the longer class period contained in the second filed *Chaudhary* Complaint. However in the only class period that matters, the class period in the first filed *Banurs* Complaint, Hanna has by far the largest LIFO losses of the two remaining movants.

---

[1]   The two cases are *Banurs v. Li Auto, Inc., et al.*, No. 1:24-cv-03470-VMS ("*Banurs*") and *Chaudhary v. Li Auto, Inc., et al.*, No. 1:24-cv-03725-FB-VMS ("*Chaudhary*").

[2]   Unless stated otherwise, the following conventions apply: (1) all citations, internal quotation marks and footnotes are omitted; (2) all emphases are added; and (3) all "Ex. _" references are to the exhibits attached to the Declaration of James M. Wilson, Jr. in Support of Charles Hanna's Motion for: (1) Consolidation of the Related Actions; (2) Appointment as a Lead Plaintiff; and (3) Approval of Lead Counsel (ECF No. 14-2). Also, all capitalized terms not defined herein have the meaning given to them in Hanna's Memorandum of Law in Support of His Motion for: (1) Consolidation of the Related Actions; (2) Appointment as a Lead Plaintiff; and (3) Approval of Lead Counsel ("Hanna Opening Br.") (ECF No. 14-1).

1

| Movant | LIFO Losses |
|--------|-------------|
| **Hanna** | **$299,399.22** |
| Wee | $206,669.35 |

As described in his sworn PSLRA Certification and his Declaration Hanna reviewed and adopted the allegations that are based on Li Auto's public disclosures and is committed to fulfilling the duties of a lead plaintiff. These things, coupled with his education, experience and background leave no doubt that Hanna is adequate and typical in all respects to serve as Lead Plaintiff.

Of the other five movants, only one remains in contention, Low Chig Wee ("Wee"), who reported higher losses for the longer class period alleged in the *Chaudhary* complaint filed by his attorney, but who has lower losses than Hanna for the original class period in the *Banurs* complaint.[3] ECF No. 16.[4] The Court should deny Wee's motion on several grounds.

A movant's losses constitute only one portion of the PSLRA analysis. Unlike Hanna, Wee's motion is fatally flawed because he has not shown that he meets the adequacy and typicality requirements of Rule 23. Contrary to Hanna's motion, Wee failed to submit a sworn

---

[3]     Motions for consolidation and appointment of lead plaintiff were filed by six shareholders of Li Auto under the PSLRA. *See* ECF No. 11 (Assets Management LLC ("Assets")); ECF No. 12 (Xu Bo ("Bo")); ECF No. 13 (Abhishek Makhija ("Makhija")); ECF No. 14 (Hanna); ECF No. 15 (John Menchaca ("Menchaca")); and ECF No. 16 (Wee). All of the movants agree that consolidation of the *Banurs* and *Chaudhary* Actions is appropriate and therefore consolidation is not addressed herein. On July 12, 2024, Makhija filed a notice of non-opposition to the competing motions. *See* ECF No. 17. On July 12, 2024, Assets filed a notice of non-opposition to the competing motions. *See* ECF No. 18. On July 16, 2024, Bo filed a notice of non-opposition to the competing motions. ECF No. 19. On July 22, 2024, Menchaca filed a notice of non-opposition. ECF No. 20. These movants therefore are no longer contending to be appointed lead plaintiff and Hanna does not address those motions herein.

[4]     References to "ECF No. __" are to the filings in the *Banurs* Action, which was the first-filed case.

declaration adequately describing his background or whether or not he relied on non-public information in making his investment decisions despite things in his background which suggested that he easily could have.  Further he failed to adopt as his own the allegations in either of the complaints, indicating a failure to meet the adequacy and typicality requirements of Rule 23.

While little is known about Wee based on the dearth of information about him provided in his opening motion papers – which omission courts have found is disqualifying in itself in other cases - due diligence performed by Hanna reveals that there is a question as to whether or not Wee relied exclusively on public information to make his Li Auto investment, which reliance is a requirement for class certification. Based on a LinkedIn profile for a "Low Chig Wee", which contains biographical information that lines up with what is known of the other remaining movant in this case, Low Chig Wee, Wee appears to be an analyst at DBS Bank. *See* Ex. A to the Declaration of James M. Wilson, Jr. in Opposition to Competing Lead Plaintiff Motion ("Wilson Opp. Decl."). Defendant company Li Auto is one the companies followed by DBS Bank ***and DBS has disclosed that certain of its analysts are not subject to U.S. restrictions on analyst communications with subject companies they cover,*** raising the possibility of Wee having had access to non-public insider information. Wilson Opp. Decl. Ex. B (DBS analyst reports on Li Auto with disclaimer to adhering to FINRA rules). Wee's apparent omission of his current employment as an analyst at a bank that covers Li Auto and failure to confirm that he did not rely on insider information to make his investment decisions means that he may be subject to unique defenses that threaten class certification and could disqualify him as a Lead Plaintiff and potential class representative.  The failure to disclose his position as an analyst at a company that follows Li Auto and that has analysts not subject to US Securities laws with possible access to

3

insider information demonstrates a lack of candor and completeness in his opening lead plaintiff filing that should disqualify him from contention as lead plaintiff.

Moreover, all movants calculated their estimated losses based on the longer class period alleged in the *Chaudhary* Action, as is customary with opening lead plaintiff motions   However, this Court has not determined which class period is most appropriate and is not bound by the alleged longer class period as the basis for damage calculations. Pursuant to case law in this circuit, for purposes of ruling on the competing lead plaintiff motions, this Court should determine estimated losses based on the more plausible class period.  In this case that would be the shorter class period alleged in the *Banurs* Action, which ends on March 20, 2024 (*see Banurs* Compl. ¶¶ 1, 28, 29) rather than the longer class period ending May 20, 2024, alleged in the *Chaudhary* Action (*see Chaudhary* Compl. ¶¶ 1, 34, 35).

The longer class period ending May 20, 2024, alleged in the *Chaudhary* Action has no factual support in the complaint to support an allegation of scienter.  Based on the allegations to date, the disclosure made by Defendants on March 21, 2024, reveals the alleged fraud on which investors relied to invest in Li Auto stock and which disclosure caused the stock price to decline. The *Chaudhary* Complaint purports to extend the class period nearly two months to end on May 20, 2024, but there are no additional allegedly false and misleading statements made after March 21, 2024, nor are there allegations that the disclosure made on May 20, 2024, revealed any fraud – the Company merely disclosed that its profits for the first quarter of 2024 declined. *See Chaudhary* Compl. ¶ 7. Based on the allegations in the current complaint, the extended *Chaudhary* class period is not plausible.  Indeed, the *Chaudhary* Complaint was filed by the same counsel representing Wee and may have been filed solely as a means to support his claimed estimated losses. Under such circumstances, courts in this circuit have relied on the more

4

plausible shorter class period for lead plaintiff purposes. *See e.g., In re Centerline Holding Co. Sec. Litig.*, No. 08 Civ. 505(SAS), 2008 WL 1959799, at *3 (S.D.N.Y. May 5, 2008) (rejecting an alleged longer class period at the lead plaintiff stage, which other movants argued had been filed in bad faith only to support larger losses, because the complaint alleged no facts that made the earlier start of the class period plausible*). **In this case, based on the more plausible class period alleged in the Banurs Complaint, Hanna has the largest LIFO losses:**[5]

| Movant | LIFO Losses |
|--------|-------------|
| **Hanna** | **$299,399.22** |
| Wee | $206,669.35 |

Hanna also meets Rule 23 typicality and adequacy requirements. Hanna submitted his PSLRA Certification that he has reviewed a complaint on file and adopts it allegations. Ex. C, ECF No. 14-4. He also filed a sworn declaration providing his background information – including that he has an undergraduate degree in marketing and finance and post-graduate studies in medical sciences, has previously worked for IBM, founded his own company, Brains II Solutions, Inc., in 1979, has been investing in the stock market for approximately 10 years and manages his own investments (Ex. D, Decl. of Charles Hanna in Supp. of His Mot. for: (1) Consolidation of the Related Actions; (2) Appointment as Lead Pl.; and (3) Approval of Lead Counsel ("Hanna Decl."), ECF No. 14-6 ¶¶ 3, 4, 5) – and understands the duties and responsibilities of being Lead Plaintiff, including fiduciary duties to the class. *Id.* at ¶ 6.

---

[5]  The courts make it clear that the lead plaintiff is not bound by a shorter class period relied on for lead plaintiff purposes and can decide how to frame the amended complaint to allege an appropriate class period, even if a court appoints the lead plaintiff based on a shorter more plausible class period at the lead plaintiff stage. *See e.g., Villare v. ABIOMED, Inc.,* No. 19 Civ. 7319 (ER), 2020 WL 3497285, at *5 n.8 (S.D.N.Y. June 29, 2020) (citing *Eichenholtz v. Verifone Holding, Inc.*, No. C07–06140(MHP), 2008 WL 3925289, at *3 (N.D. Cal. Aug. 22, 2008)).

Hanna clearly meets the PSLRA's stringent requirements to serve as Lead Plaintiff on behalf of Li Auto shareholders in this case.  Hanna respectfully asks this Court to grant his motion to be appointed Lead Plaintiff and approve his selection of the Faruqi Firm as Lead Counsel.

## ARGUMENT

### I.    WEE FAILED TO DEMONSTRATE THAT HE MEETS THE ADEQUACY AND TYPICALITY REQUIREMENTS OF RULE 23

The goal of the PSLRA's lead plaintiff provision "is to locate a person or entity whose sophistication and interest in the litigation are sufficient to permit that person or entity to function as an active agent for the class[.]" *In re Cendant Corp. Litig*., 264 F.3d 201, 266 (3d Cir. 2001).  To effectuate this goal, district courts are given broad discretion to reject lead plaintiff applicants upon a showing they are atypical, inadequate, or subject to unique defenses. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  The dispositive issue is whether there exists a "non-speculative risk that the movant [with the greatest financial loss] will not be adequate." *Schaffer v. Horizon Pharma Plc*, No. 16-CV-1763 (JMF), 2016 WL 3566238, at *3 (S.D.N.Y. June 27, 2016) (listing cases).  As many courts have noted, the standard of review "is a 'predictive and probabilistic' process that requires evaluation of 'potential' risks" that a movant's unique defense could threaten to become the focus of the litigation. *Karp v. Diebold Nixdorf, Incorporated*, No. 19 Civ. 6180 (LAP), 2019 WL 6619351, at *2 (S.D.N.Y. Dec. 5, 2019).  The breadth of that inquiry underscores that the district court's "ultimate obligation to appoint as lead plaintiff [the candidate] who [is] most capable of representing the interests of the class members." *Pirelli Armstrong Tire Corp. Retiree Med.  Benefits Tr. v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 407 n.19 (S.D.N.Y. 2004). Here, Wee has failed to make the showing required that he meets the PSLRA's requirements for adequacy and typicality.

6

Wee did not submit a declaration describing his employment, educational, or investment background for the Court to determine his adequacy and typicality under Rule 23. Rather, the only information about Wee was unsworn statements provided by his attorneys in their opening legal brief in which they claimed that he lives in Singapore, earned a degree in engineering from Nanyang Technological University and has been investing for more than a decade. *See* Mem. of Law in Supp. of Motion of Low Chig Wee to: (1) Consolidate Related Actions; (2) Appoint Lead Pl.; and (3) Approve Lead Pl.'s Selection of Counsel 7, ECF No. 16-1 ("Wee LP Br."). Wee's counsel included no sworn affidavit or any supporting material for these bald assertions. Further, although Wee filed a PSLRA Certification and claimed that he reviewed a complaint, he failed to state whether he agrees with the complaint's allegations and adopts them, including whether he relied on public information to make his Li Auto transactions. *See Chaudhary* Compl. ¶¶ 1, 41, 44.

In other cases, lead plaintiff movants who have similarly failed to provide information about themselves with their motion papers have been summarily rejected. For example, in *Perez v. HEXO Corp.*, Judge Buchwald declined to appoint as lead plaintiff the movant with the largest financial interest because the court was skeptical that the movant, "an individual investor about whom little is known – possesse[d] the requisite sophistication to serve as lead plaintiff . . . ." No. 19 Civ. 10965 (NRB), 2020 WL 905753, at *3 (S.D.N.Y. Feb. 25, 2020). The movant in *Perez* failed to provide information about himself in his opening lead plaintiff papers other than listing his stock transactions. Only after other movants raised this lack of information about him did he subsequently file a declaration with some information about himself including his professional career and claimed that he had years of investing experience. *Id.* The court held:

> given Wong's [movant] failure to provide *any* information regarding his
> experience in his preliminary motion, the Court questions whether Wong will

7

meaningfully oversee and control the prosecution of this consolidated class action.

*Id.* (citing *Karp v. Diebold Nixdorf, Incorporated*, No. 19 Civ. 6180(LAP), 2019 WL 5587148, at *6 (S.D.N.Y. Oct. 30, 2019) ("Here, [movants], as individual investors, have provided the Court with little to go on with respect to their alleged capacity to manage this litigation . . . . Given this lack of information, the Court is skeptical that [movants] are equipped to serve as lead plaintiff."); *see also Nayani v. LifeStance Health Grp., Inc.*, 641 F. Supp. 3d 57, 63 (S.D.N.Y. 2022) ("The Court has significant doubts that [movant] will manage and monitor counsel in the way that Congress envisioned when it enacted the PSLRA [because she] does not have any experience managing attorneys in litigation.").

In this case, there is even less information about Wee than the information discussed in the cases cited above, and none of it comes directly from him but rather has been submitted in unverified form by his attorneys without any supporting evidence. Such apparent disinterest in being involved in this case disqualifies Wee from being appointed lead plaintiff.

On top of Wee's failure to submit any information about himself in support of his lead plaintiff motion (rather than relying on his counsel to submit unverified information in their legal brief), evidence of his apparent employment as an analyst at DBS Bank, which covers Li Auto, calls into question his adequacy and typicality. First, movant Wee appears to be the same Low Chig Wee appearing in the attached LinkedIn profile page as both attended Nanyang Technological University Singapore. Compare Wilson Opp. Decl., Ex. A with Wee LP Br. 7.

Second, as clearly shown in the DBS analyst report issued dated March 6, 2024, examining Li Auto's recent performance, DBS analysts on the report "are not subject to FINRA Rule 2241 restrictions on analyst compensation, communications with a subject company, public appearances and trading securities held by a research analyst." Wilson Opp. Decl. Ex. B, Mar. 6,

8

2024 Report 12. [6] Wee's apparent undisclosed employment at DBS, and the fact that certain DBS analysts are not subject to restriction on communications with Li Auto raises the serious prospect that this case will become bogged down litigating Defendants' argument - unique to Wee - that he did not rely on non-public information to make his investment decisions. Defendants surely will raise this argument which may threaten to undermine his ability to assert fraud-on-the-market presumption of reliance thereby rendering him an inadequate class representative. The court in *Blank v. Jacobs* was faced with a similar scenario at the class certification stage where defendants argued that one of the lead plaintiffs had purchased shares based on inside information from conversations with the president and chief financial officer. After the movant admitted that "there may have been times when it received information from the company that was not otherwise available," the court disqualified that party. *Blank v. Jacobs,* No. 03-CV-2111 (JS)(MLO), 2009 WL 3233037, at *5 (E.D.N.Y. Sept. 30, 2009); *see also e.g., Faris v. Longtop Fin. Techs. Ltd.*, No. 11 Civ. 3658(SAS), 2011 WL 4597553, at *8 (S.D.N.Y. Oct. 4, 2011) (the unique defense that a movant purchased stock after notice of the alleged fraud may undermine its ability to assert the fraud-on-the-market presumption of reliance); *In re IMAX Sec. Litig.*, 272 F.R.D. 138, 155, 160 (S.D.N.Y. 2010) (denying class certification and reopening the lead plaintiff selection process where the previously appointed lead plaintiff was "at a minimum . . . subject to unique defenses").

At bottom, Wee has failed to make the requisite showing that he meets the adequacy and typicality requirements of the PSLRA and his motion for lead plaintiff should be denied and Hanna's motion for lead plaintiff should be granted.

---

[6]    *See* FINRA Rule 2241, Research Analyst and Research Reports at www.finra.org/rules-guidance/rulebooks/finra-rules/2241 (last visited July 23, 2024).

## II.    HANNA HAS THE LARGEST LOSSES BASED ON THE ONLY PLAUSIBLE CLASS PERIOD ALLEGED IN THE *BANURS* ACTION

All movants initially moved for lead plaintiff based on the longer class period alleged in the *Chaudhary* Action, as is customary with opening lead plaintiff motions. However, this Court has not determined which class period governs and is not bound by the alleged longer class period to rule on lead plaintiff motions. This Court should base its decision on the more plausible class period alleged in the *Banurs* Action for the estimated loss calculation. Under that scenario Hanna has the largest LIFO losses.

It is well established that a court may determine estimated losses based on the more plausible class period especially when complaints alleging other class periods may have been filed solely to support a claim for larger losses. In *Villare v. ABIOMED, Inc.*, the court was faced with competing class periods at the lead plaintiff stage and held:

> Here, Bamdad contends that the allegations anchoring the longer class period in the *Barry* complaint are both implausible and frivolous, such that the shorter class period in the *Villare* complaint should be used in calculating the movants' financial interest. **The Court agrees**. The *Barry* complaint proffers no factual allegations that defendants' statements made in early November 2018 were false or misleading with respect to ABIOMED's declining revenue growth in the following three fiscal quarters of 2019, its lack of a sufficient plan to stem its declining growth, that ABIOMED was unlikely to restore its rate of revenue growth, and that it was reasonably likely to revise its full-year 2020 guidance. Indeed, those statements were made in connection with the record high revenue growth in ABIOMED's second quarter of 2019. But, Local 705 contends, that 'defendants' positive statements concerning historical revenue growth in the second quarter of 2019' would already have been undermined by 'their observed decline in [the rate of] revenue growth' in the third quarter of 2019. Contrary to Local 705's assertion, however, **there are simply no allegations** that defendants knew that ABIOMED's rate of revenue growth was already in decline in early November 2018, one month into the third quarter of 2019. Nonetheless, that is not to say that plaintiffs could never plead or prove an observed decline in the rate of revenue growth by early November 2018. As it stands now, the *Barry* complaint pleads no facts that make this plausible.
>
> Moreover, Bamdad persuasively argues that there is a risk that the longer class period is a product of **gamesmanship**. Barry filed his complaint, along with his certification of loss, hours before the statutory sixty-day window closed.

10

> Tellingly, Barry's certification of loss indicates that but for the expanded period, his loss would plummet to $38,654.42 from $222,251.60. *See* Doc. 18, Ex. C ('Barry's loss analysis'). Therefore, the Court finds, on balance, that the shorter class period—January 31, 2019 through July 31, 2019—should be used for purposes of the lead-plaintiff analysis. Bamdad's claimed loss of $581,516.80 during this period makes him the movant with the largest financial interest. Not far behind, however, is Local 705, which lost $441,987.85 during the same period.

2020 WL 3497285, at *5.

Here, not only are there no allegations in the current complaint supporting the extension of the class period from March 20, 2024 to May 20, 2024 as alleged in the *Chaudhary* Action, that longer class period was alleged by the same counsel now representing Wee whose losses are much lower based on the shorter *Banurs* class period raising the specter that the *Chaudhary* Action's longer class period was alleged solely to support Wee's claimed estimated losses which are much less under the shorter *Banurs* class period.

The disclosure alleged in the *Banurs* Complaint made by Defendants on March 21, 2024, is the only disclosure that reveals the alleged fraud on which investors relied to invest in Li Auto stock and which disclosure caused the stock price to decline. The *Banurs* Action alleges that Defendants overstated the demand for the Company's vehicles and the efficacy of its operating strategy in launching the Li MEGA and therefore it was unlikely to meet its Q1 2024 vehicle deliveries estimates.  The truth of the fraud was disclosed with the Company's disclosures on March 21, 2024 of the following:

> Li Auto [. . .] today provided an updated delivery outlook for the first quarter of 2024.  Due to lower-than-expected order intake, the **Company now expects its vehicle deliveries for the first quarter of 2024 to be between 76,000 and 78,000 vehicles**, revised from the previous vehicle delivery outlook of between 100,000 and 103,000 vehicles.

> "I want to reflect on a couple of the key issues that we faced in March and provide some insights and solutions.

11

> "First, **we want to acknowledge that the operating strategy of Li MEGA was mis-paced.** We planned operations of Li MEGA as if the model had already entered the 1-to-10 scaling phase, while in fact, we were still in the nascent 0-to-1 business validation period. Similar to Li ONE and our EREV technologies**, Li MEGA and our BEV technologies will also need to undergo this 0-to-1 validation process.  Next, we will first focus on our core user group and target cities with stronger purchasing power, recalibrating the Li MEGA strategy back to the 0-to-1 phase. After that, we will expand our reach to a broader user base and more cities**.
>
> "Second, we put excessive emphasis on sales volume and competition, distracting us from what we excel at — creating value for our users and driving operating efficiency. We will lower our delivery expectations and restore sustainable growth by refocusing on enhancing user value instead of competition, while maintaining operating efficiency," commented [Defendant X. Li].

S*ee Banurs* Compl. ¶28. The *Banurs* Complaint alleges that the disclosure of this information caused Li Auto's stock price to fall 7.48%. *Id.* at ¶ 29.

The *Chaudhary* Action, filed by Wee's attorney, alleges, without support, that the fraud was more fully disclosed on May 20, 2024, when Li Auto announced its financial results for the quarter ended March 31, 2024.

> In this press release, Li Auto announced that its gross profit was "RMB5.3 billion (US$731.9 million) in the first quarter of 2024, representing an increase of 38.0% from RMB3.8 billion in the first quarter of 2023 and a decrease of 46.0% from RMB9.8 billion in the fourth quarter of 2023."

*Chaudhary* Compl. ¶¶ 1, 34, 35).  However, this supposed corrective disclosure says nothing about the fraud, the Li MEGA strategy, or projected vehicle delivery estimates. It represents the financial synthesis of everything that had occurred with respect to the Company for the preceding three months without any enumerated tether to the alleged fraud alleged in the original *Banurs* complaint.  On its face, the second complaint appears to have been quickly drafted, solely to try to capture the additional stock drop to enhance the claimed losses for Wee at the lead plaintiff stage.  There are no false statements alleged in the longer class period, no specific

12

allegations or scienter, and no explanation as to what parts, if any, of the quarterly financials make new revelations of fraud.

Based on the more plausible class period alleged in the *Banurs* Complaint, Hanna's losses of $299,399.22 are over 30 % larger that Wee's losses, indicated by his trade data, of $206,669.35.

Hanna also meets Rule 23 typicality and adequacy requirements. Hanna submitted his PSLRA Certification that he has reviewed a complaint on file and adopts it allegations. Ex. B, ECF No. 14-4. He also filed a sworn declaration providing his background information – including that he has an undergraduate degree in marketing and finance and post-graduate studies in medical sciences, has previously worked for IBM, founded his own company, Brains II Solutions, Inc., in 1979, has been investing in the stock market for approximately 10 years and manages his own investments (Ex. D, Hanna Decl. ¶¶ 3, 4, 5) – and understands the duties and responsibilities of being Lead Plaintiff, including fiduciary duties to the class. *Id.* at ¶ 6.

At bottom, Hanna, not Wee, has the largest losses under the only reasonable class period alleged in the *Banurs* Action and meets the typicality and adequacy requirements of the PSLRA and should be appointed lead plaintiff.

### III.    HANNA'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL SHOULD BE APPROVED

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the Lead Plaintiff is entitled to select and retain Lead Counsel for the Class, subject to the Court's approval. Hanna has selected the Faruqi Firm to be Lead Counsel for the Class.

As thoroughly briefed in Hanna's opening lead plaintiff filings in this case, the Faruqi Firm – Hanna's chosen counsel – is a minority-owned and woman-owned law firm, and, as reflected in the firm's resume, possesses extensive experience successfully litigating complex

13

class actions on behalf of plaintiffs, including securities class actions. *See* Ex. E, Firm Resume of Faruqi & Faruqi, LLP, ECF No. 14-7; *see also Reitan v. China Mobile Games & Entm't Grp., Ltd.*, 68 F. Supp. 3d 390, 401 (S.D.N.Y. 2014) (appointing the Faruqi Firm as sole lead counsel and noting: "Faruqi & Faruqi has extensive experience in the area of securities litigation and class actions. The firm's resume indicates that it has litigated more than ten prominent securities class actions since its founding in 1995. Faruqi & Faruqi achieved successful outcomes in many of these cases.").

The Faruqi Firm is also currently litigating several prominent securities class actions. *See, e.g., Clifton v. Willis*, No. 1:22-cv-03161-DDD-JPO (D. Colo.) (appointed sole lead counsel for the class of NewAge, Inc. shareholders); *Lim v. Hightower*, No. 4:23-cv-01454-BYP (N.D. Ohio) (appointed sole lead counsel for the class of Lordstown Motors Corp. shareholders); *Johnson v. Luminar Techs., Inc.*, No. 6:23-cv-982-PGB-LHP (M.D. Fla.) (appointed sole lead counsel for the class); *Kain v. Ampio Pharms., Inc.*, No. 22-cv-02105-WJM-MEH (D. Colo.) (appointed sole lead counsel for the class); *In re Lumen Techs., Inc. Sec. Litig.*, No. 3:23-cv-00286-TAD-KDM (W.D. La.) (appointed co-lead counsel for the class); *Murphy v. Argo Blockchain plc*, No. 1:23-cv-00572-NRM-SJB (E.D.N.Y.) (appointed sole lead counsel for the class); *In re Revance Therapeutics, Inc. Sec. Litig.*, No. 5:21-cv-09585-EJD (N.D. Cal.) (appointed sole lead counsel for the class); and *Halman Aldubi Provident & Pension Funds Ltd. v. Teva Pharms. Indus. Ltd.*, No. 20-4660-KSM (E.D. Pa.) (appointed sole lead counsel for the class).

The Faruqi Firm, as reflected in the firm's resume, possesses extensive experience successfully litigating complex class actions on behalf of plaintiffs, including securities class actions. The Faruqi Firm has a proven track record of successfully representing its clients in

14

these matters and is nationally recognized for its excellence. Not only does the firm have the experience and expertise necessary to obtain significant successes for its clients, it has a demonstrated commitment to diversity and inclusion that clients and judges increasingly seek from the bar.[7] Class members in securities class actions have diverse backgrounds, and that diversity should be reflected in class counsel. Currently, approximately 40% of the firm's partnership positions are held by women and minorities, and the firm is committed to growing this figure in the coming years. *See* https://www.faruqilaw.com/our-attorneys. The Faruqi Firm is proud to be made up of such a diverse group of legal professionals and strongly believes that its clients are better served because of it.

## CONCLUSION

For the foregoing reasons, Hanna respectfully requests that the Court: (1) consolidate the above-captioned, related actions; (2) appoint him as Lead Plaintiff; (3) approve his selection of the Faruqi Firm as Lead Counsel for the putative Class; and (4) grant such other relief as the Court may deem just and proper.

Dated: July 23, 2024

Respectfully submitted,

**FARUQI & FARUQI, LLP**

By:    */s/ James M. Wilson, Jr.*
         James M. Wilson, Jr.

James M. Wilson, Jr.
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email:  jwilson@faruqilaw.com

---

[7]    *See* Anne Cullen, More Judges Are Demanding Diversity Among Class Counsel, Law360 (July 16, 2020), https://www.law360.com/articles/1292926/more-judges-are-demanding-diversity-among-class-counsel; Ralph Chapoco, Calls for Lawyer Diversity Spread to Complex Class Litigation, Bloomberg Law (July 30, 2020), https://www.bloomberglaw.com/document/XA1TPNEG000000?bna_news_filter=social-justice&jcsearch=BNA.

Robert W. Killorin (*pro hac vice
forthcoming*)
**FARUQI & FARUQI, LLP**
3565 Piedmont Road NE Building Four
Suite 380
Atlanta, GA 30305
Telephone: 404-847-0617
Facsimile: 404-506-9534
Email:  rkillorin@faruqilaw.com

*Attorneys for [Proposed] Lead Plaintiff
Charles Hanna and [Proposed] Lead
Counsel for the putative Class*

16