**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DINESH BANURS, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>LI AUTO INC., XIANG LI, TIE LI, and DONGHUI MA,<br><br>Defendants. | Case No. 1:24-cv-03470-VMS |
| SAQIB CHAUDHARY, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LI AUTO INC., XIANG LI, TIE LI, and DONGHUI MA,<br><br>Defendants. | Case No. 1:24-cv-03725-FB-VMS |

**CHARLES HANNA'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION FOR: (1) CONSOLIDATION OF THE RELATED ACTIONS; (2) APPOINTMENT AS LEAD PLAINTIFF; AND (3) APPROVAL OF LEAD COUNSEL**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .............................................................................................................................. 3

I.      WEE IS DISQUALIFIED.................................................................................................. 3

        A.    WEE FAILED TO DEMONSTRATE HIS ADEQUACY AND TYPICALITY ..... 3

        B.    HANNA HAS LARGER LIFO LOSSES UNDER THE MORE
               REASONSABLE *BANURS* CLASS PERIOD ....................................................... 4

II.     HANNA IS NOT A NET GAINER.................................................................................... 5

III.    HANNA'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL SHOULD
       BE APPROVED ................................................................................................................ 9

CONCLUSION.......................................................................................................................... 10

i

## TABLE OF AUTHORITIES

**Cases**                                                                                                        **Page(s)**

*Blank v. Jacobs*,
No. 03-CV-2111 (JS)(MLO), 2009 WL 3233037 (E.D.N.Y. Sept. 30, 2009) .........................4

*Cook v. Allergan PLC*,
18 Civ. 12089 (CM), 2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019) ......................................3

*Faris v. Longtop Fin. Techs. Ltd.*,
No. 11 Civ. 3658(SAS), 2011 WL 4597553 (S.D.N.Y. Oct. 4, 2011) ....................................4

*In re Fuwei Films Sec. Litig.*,
247 F.R.D. 432 (S.D.N.Y. 2008) ...........................................................................................6

*In re IMAX Sec. Litig.*,
272 F.R.D. 138 (S.D.N.Y. 2010) ...........................................................................................4

*In re K-V Pharm. Co. Sec. Litig.*,
No. 11CV01816 AGF, 2012 WL 1570118 (E.D. Mo. May 3, 2012) ......................................9

*Karp v. Diebold Nixdorf, Inc.*,
No. 19 Civ. 6180(LAP), 2019 WL 5587148 (S.D.N.Y. Oct. 30, 2019) ..................................3

*Khunt v. Alibaba Grp. Holding Ltd.*,
102 F. Supp. 3d 523 (S.D.N.Y. 2015)......................................................................................6

*May v. Barclays PLC*,
No. 23-cv-2583 (LJL), 2023 WL 5950689 (S.D.N.Y. Sept. 13, 2023) ..............................5, 6

*Nayani v. LifeStance Health Grp., Inc.*,
641 F. Supp. 3d 57 (S.D.N.Y. 2022)........................................................................................3

*Perez v. HEXO Corp.*,
No. 19 Civ. 10965 (NRB), 2020 WL 905753 (S.D.N.Y. Feb. 25, 2020) ............................3, 4

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*,
229 F.R.D. 395 (S.D.N.Y.2004) ..............................................................................................6

*In re Razorfish, Inc. Sec. Litig.*,
143 F. Supp. 2d 304 (S.D.N.Y. 2001).......................................................................................6

*Reitan v. China Mobile Games & Entm't Grp., Ltd.*,
68 F. Supp. 3d 390 (S.D.N.Y. 2014).....................................................................................10

*Stinson v. City of New York*,
282 F.R.D. 360 (S.D.N.Y. 2012) .............................................................................................3

*Villare v. ABIOMED, Inc.*,
No. 19 Civ. 7319 (ER), 2020 WL 3497285 (S.D.N.Y. June 29, 2020) ....................................5

**Other Authorities**

Anne Cullen, More Judges Are Demanding Diversity Among Class Counsel,
Law360 (July 16, 2020) .............................................................................................................9

Ralph Chapoco, Calls for Lawyer Diversity Spread to Complex Class Litigation,
Bloomberg Law (July 30, 2020) ...............................................................................................9

Charles Hanna ("Hanna") respectfully submits this Reply in response to the opposition filed by Low Chig Wee ("Wee") (ECF No. 21) ("Wee Opp.") and in further support of Hanna's motion for appointment as Lead Plaintiff and approval of Faruqi & Faruqi, LLP as Lead Counsel (ECF No. 14).[1]

## PRELIMINARY STATEMENT[2]

Hanna is the only remaining movant with the largest financial interest who satisfies the requirements of Fed. R. Civ. P. 23 and he should be appointed Lead Plaintiff.

As discussed in Hanna's Opposition Papers ("Hanna Opposition" or "Hanna Opp.") (ECF No. 22), Wee's motion should be denied on the following grounds:

- Wee is disqualified because he failed to disclose sufficient information about himself in his opening papers ("Wee's Lead Plaintiff Motion", ECF Nos. 16 to 16-6);

- Based on information obtained through Hanna's due diligence, Wee may be an analyst at DBS Bank which covers Li Auto and he may have traded on insider information, which may subject him to a unique defense – any belated disclosure from Wee now seeking to clarify this potential issue should be rejected as is often done by courts dealing with after-fact clarifications attempted by movants;

- Hanna's losses are greater than Wee's losses under the more reasonable Class Period alleged in *Banurs* – the *Chaudhary* Complaint alleging the weaker longer

---

[1]   Except as provided below, all exhibit references are to the exhibits submitted by Hanna in his opening lead plaintiff papers. ECF Nos. 14-2 to 14-8. Also, all capitalized terms not defined herein have the meaning given to them in Hanna's opening brief ("Hanna Opening Br."). ECF No. 14-1.

[2]   Hanna and Wee agree that the second-filed case *Chaudhary v. Li Auto, Inc., et al.*, No. 1:24-cv-03725-FB-VMS ("*Chaudhary*") should be consolidated with the first-filed *Banurs v. Li Auto, Inc., et al.*, No. 1:24-cv-03470-VMS ("*Banurs*") under Fed. R. Civ. P. 41. Consolidation is not addressed herein. All references to "¶ " are to the *Banurs* Complaint, unless otherwise noted.

class period was filed by Wee's counsel and may have been done not to benefit the putative class but to increase Wee's losses and his chances of being appointed lead plaintiff, which court's also view as disqualifying.

Wee's argument that Hanna is inadequate under Rule 23 because he is subject to unique defenses as a net gainer is wrong.

Hanna's PSLRA Certification shows that the sold 30,000 shares on the first day of the class period when the stock price was only inflated due to the first of three false statements alleged during the class period. That gain could not logically include inflation caused by the two false statements that were to follow during the class period. Hanna then purchased and sold 10,000 shares on the same day, which would be a wash for Dura purposes. He also purchased 30,000 more shares at fully inflated prices *after* all three false statements had been made by defendants. Hanna held those 30,000 shares through the end of the class period and suffered Dura losses based on the full amount of alleged inflation in the stock price. It defies logic to call him a "net gainer" when his gains came from a sale when only one false statement had been made and his losses, on the same number of shares of stock, came at the end of the class period when the price was fully inflated from all three false statements.

The amount of Hanna's Dura losses can also be estimated. Because the complaint does not assign relative amounts of artificial stock price inflation to the separate false statements, it is reasonable, for purposes of estimating damages, to assign the inflation equally to each of the false statements. That would mean that for purposes of estimating damages, each false statement inflated the price of the stock by $.85, with total inflation for the three false statements being $2.55. Under that analysis, as detailed below, Hanna's Dura losses were $76,500 and his Dura gains were $25,500 for net loss of $51,000. He was not a net gainer.

2

**ARGUMENT**

**I.    WEE IS DISQUALIFIED**

   **A.    WEE FAILED TO DEMONSTRATE HIS ADEQUACY AND TYPICALITY**

As described in the Hanna Opposition, Wee has failed to make the showing required that he meets the PSLRA's requirements for adequacy and typicality.  Hanna Opp. 6-9. He should be disqualified for failing to make this basic required showing.

Rather than submit a sworn declaration describing his employment, educational, or investment background for the Court to review under Rule 23, Wee's Lead Plaintiff Motion relies solely on his attorneys' unsworn description of his background in a legal brief. This information, even had it been provided by Wee himself, is sparse at best. This kind of failure, in addition to not providing the information necessary to determine adequacy under Rule 23, has been viewed as evidence that the movant will not oversee and control his attorneys. *See Perez v. HEXO Corp.*, No. 19 Civ. 10965 (NRB), 2020 WL 905753, at *3 (S.D.N.Y. Feb. 25, 2020); *see also Karp v. Diebold Nixdorf, Inc.*, No. 19 Civ. 6180(LAP), 2019 WL 5587148, at *5-7 (S.D.N.Y. Oct. 30, 2019); *Nayani v. LifeStance Health Grp., Inc.*, 641 F. Supp. 3d 57, 63, 66 (S.D.N.Y. 2022).[3]

---

[3]    Wee's belated submission of a sworn Declaration addressing these deficiencies with his reply should be rejected as discussed in the cases cited herein. *See* ECF No. 23-4. Moreover, Wee's attempt to cast aspersions on Hanna by referring to his motivational speaking engagements based on prior experiences, which has absolutely nothing do with his adequacy to represent the class, demonstrates his desperation to separate himself from the valid and relevant arguments Hanna makes regarding Wee's failure to be upfront with the Court in his preliminary motion papers. *See Wee* Reply, ECF No. 23 at 6 n. 3.  Even if relevant, which it is not, many courts have concluded that minor, unrelated allegations of prior conduct, including wrongdoing (which Hanna's past is not) are insufficient to render a proposed class representative inadequate. *E.g.*, *Cook v. Allergan PLC*, 18 Civ. 12089 (CM), 2019 WL 1510894, at *2 n.1 (S.D.N.Y. Mar. 21, 2019) ("Neither of these [references to various plaintiffs' unrelated misdemeanors] has the slightest relevance to the court's lead plaintiff analysis, except insofar as they demonstrate the depths to which lawyers will descend in an effort to become lead counsel...."); *Stinson v. City of New York*, 282 F.R.D. 360, 373 (S.D.N.Y. 2012) ("[M]ost courts have rejected challenges to adequacy based on allegations that plaintiffs backgrounds were alleged to include unrelated unsavory, unethical or even illegal conduct." (quoting *German v. Fed. Home Loan Mortg. Corp.*, 168 F.R.D. 145, 155 (S.D.N.Y. 1996))).

Hanna also presented evidence that Wee appears to be an analyst at DBS Bank, which covers Li Auto. Compare Wilson Opp. Decl., Ex. A with Wee LP Br. 7. This employment calls into question his adequacy and typicality.  DBS analysts appear not to be subject to the same level of regulatory scrutiny that prohibits communications with companies they cover like analysts in the U.S. are, which raises the specter that Wee may have traded based on inside non-public information. Wilson Opp. Decl. Ex. B, Mar. 6, 2024 Report 12. Wee's apparent undisclosed employment at DBS, and the fact that certain DBS analysts are not subject to restriction on communications with Li Auto raises the serious prospect that this case will become bogged down litigating Defendants' argument - unique to Wee - that he did not rely on non-public information to make his investment decisions. *See Blank v. Jacobs,* No. 03-CV-2111 (JS)(MLO), 2009 WL 3233037, at *5 (E.D.N.Y. Sept. 30, 2009).

Any attempt by Wee to now provide this information in a reply only after Hanna uncovered it should be rejected. *See HEXO Corp.*, 2020 WL 905753, at *3 (movant failed to provide any information with his preliminary motion and sought to do so only because other movants had raised the issue with the court).

At bottom, Wee has failed to make the requisite showing that he meets the adequacy and typicality requirements of the PSLRA and his motion for lead plaintiff should be denied and Hanna's motion for lead plaintiff should be granted.

**B.    HANNA HAS LARGER LIFO LOSSES UNDER THE MORE REASONSABLE *BANURS* CLASS PERIOD**

Hanna has larger LIFO losses than Wee based on the only reasonably supported Class Period that was alleged in the *Banurs* complaint. Hanna Opp. 10-13.

This Court should determine losses at the Lead Plaintiff stage based on the Class Period alleged in *Banurs*. As shown in his opposition brief (Hanna Opp. 11), there no allegations in the

4

current complaint supporting the extension of the class period from March 20, 2024 to May 20, 2024 as alleged in *Chaudhary*.

Moreover, the longer class period was alleged by the same counsel now representing Wee whose losses are much lower based on the shorter *Banurs* Class Period raising the specter that *Chaudhary*'s longer class period was alleged solely to support Wee's claimed estimated losses which are much less under the shorter *Banurs* class period. Such gamesmanship by Wee and his counsel merit disqualification. *See Villare v. ABIOMED, Inc.*, No. 19 Civ. 7319 (ER), 2020 WL 3497285, at *5 (S.D.N.Y. June 29, 2020); *see also, e.g.*, *May v. Barclays PLC*, No. 23-cv-2583 (LJL), 2023 WL 5950689, at *15 (S.D.N.Y. Sept. 13, 2023) (rejecting a movant who had filed an initial complaint listing his transactions, but then had his spouse and a company he controlled assign him additional shares to increase his losses after other motions were filed reporting larger losses than he initially reported with his complaint: "The timing of the filings suggest that the assignment reflected a last-minute decision by Baker—perhaps driven by his counsel—to ensure that he would still have the largest financial interest in the relief, notwithstanding the May Group's filing.").

At bottom, the *Banurs* Class Period should used by the Court to determine estimated losses: it is the more reasonable class period alleged and the longer weaker class period alleged in the *Chaudhary* Complaint appears to have been contrived solely as a means to try to claims larger losses for Wee for Lead Plaintiff purposes. Under the Class Period alleged by *Banurs*, Hanna clearly has the largest losses and should be appointed Lead Plaintiff.

## II.      HANNA IS NOT A NET GAINER

Wee's argument that Hanna is disqualified due the sales of his stock on his February 26, 2024 fails. Wee Opp. 8.

"The PSLRA does not specify a method for calculating which plaintiff has the largest

5

financial interest and neither the Supreme Court nor the Second Circuit has articulated such a method." *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 436 (S.D.N.Y. 2008). "[T]he method used and factors considered in determining each movant's financial interest remain fully within the discretion of the Court." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.,* 229 F.R.D. 395, 406–07 (S.D.N.Y.2004); *May*, 2023 WL 5950689, at \*15 ("The presumption that Congress established through the PLSRA was that the person or persons who had the most to gain or lose from the litigation would be the most adequate to represent the class."). Courts in this Circuit favor the last-in-first-out methodology to calculate losses subject to *Dura's* loss causation principles. *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 531 (S.D.N.Y. 2015) (applying *Dura* at lead plaintiff stage); *see also In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 307 (S.D.N.Y. 2001) ("The theory of the[ lead plaintiff] provisions was that if an investor with a large financial stake in the litigation was made lead plaintiff, such a plaintiff—frequently a large institution or otherwise sophisticated investor—would be motivated to act like a 'real' client, carefully choosing counsel and monitoring counsel's performance to make sure that adequate representation was delivered at a reasonable price."). Wee's argument that Hanna is a net gainer completely ignores *Dura* and the case law in this Circuit.  Using the damage methodology mandated by *Dura*, Hanna was a net loser, not a net gainer.

For purposes of estimating damages to see if a party is a net gainer in this case, it is reasonable to divide the artificial stock price inflation alleged to have been caused by three separate false statements equally among those statements.  Accordingly, each of the three false statements alleged would have artificially inflated the price of the stock by $.85 for the total inflation of alleged in the complaint of $2.55.

As shown in the chronology below, at the beginning of the Class Period Hanna owned

6

30,000 shares of Li Auto. ECF Nos. 14-4, 14-5. He sold all of those shares on February 26, 2024, the first day of the Class Period. *Id.* He would have benefited in that sale from the artificial inflation of the stock price caused by Defendants' first false statement, but not the two false statements that followed.  Therefore, as detailed below, a reasonable estimate of his gains on the transaction at the beginning of the class period would be $25,500.  That is the number to be netted against his losses to determine if he is a net gainer or a net loser.

After all three alleged false statements had been made by Defendants – on February 26, February 29 and March 1 - and the stock was inflated by $2.55, the maximum extent.  After that Hannah bought 40,000 more shares of Li Auto at fully inflated prices with $2.55 of artificial inflation per share.  He held 30,000 of those shares through the end of the Class Periods alleged in both cases.  He sold 10,000 of the 40,000 shares during the class period at fully inflated prices for a wash. *Id.* Hanna suffered the maximum amount of *Dura* losses possible on the second purchase 30,000 shares, whereas he only had a *Dura* gain of the inflation caused by the first of three false statements in his initial sale of 30,000 shares on the first day of the Class Periods. *Id.* Therefore, his gains from that sale due to the fraud (based on one false statement) are netted against his losses (based on three false statements) for what happens to be the same exact number of shares. It is clear that he was a net loser, not a net gainer, as reflected in the chronology below:

**Relevant Chronology of Hana's Trades in Li Auto**

Before start of Class Period on February 26, 2024
Hanna has accumulated 30,000 shares of Li Auto stock.

February 26, 2024
Class Period begins when Defendants make the first of three false statements that would be made during the Class Period. ¶ 21.

Also on February 26, 2024, Hanna sells all of the 30,000 shares in Li Auto that he had accumulated before the Class Period. That sale was at an enhanced price caused by just

7

the first of three false statements Defendants made to the market during the Class Period. Hanna did receive some extra gain because of the artificial inflation in stock price due to the first false statement. However, he obviously did not receive any gain from the inflation that would follow from the two additional false statements that were made later in the Class Period on February 29 and March 1, 2024.  A reasonable estimate of his gain would be $.85 (one third of total artificial inflation) times 30,000 (amount of shares sold) for $25,500 gain.

February 29, 2024

Defendants make the second of three false statements to the market which causes further artificial inflation to the price of the stock.  ¶ 25.  A reasonable estimate of the artificial stock price inflation attributable to this statement would be $.85 (one third of total artificial inflation).

March 1, 2024

Defendants make the third of three false statements to the market which causes the final amount of artificial inflation to be added to the price of the stock.  ¶ 26.  A reasonable estimate of the artificial stock price inflation attributable to this statement would be $.85 (one third of total artificial inflation), with the inflation for the three false statements totaling the $2.55 total inflation alleged in the complaint.

March 6, 2024

Hanna buys and then sells 10,000 shares on the same day.  Both transactions were when the stock was a fully inflated prices, so for Dura purposes, the transaction on March 6, 2024 are a wash.

March 4, 7 and March 18, 2024

After the last false statement, but before the end of the Class Period, Hanna purchases another 30,000 shares of Li Auto stock *at fully artificially inflated prices*. The inflation from all three false statements made during the Class Period was baked into the prices. Hanna holds these shares through the end of the Class Period.

March 21, 2024

The *Banurs* Class Period ends. Hanna is still holding the 30,000 shares he bought at fully inflated prices, causing him to suffer full *Dura* losses of the full price inflation of $2.55 per share.  This results in a Dura loss of 20,000 (shares) times $2.55 (amount of stock drop due to artificial inflation coming out of the stock price due to the revelation of the fraud) or $76,500.

***This Dura loss of $76,500 exceeds the gain of $25,500 Hanna obtained through his sale at the beginning of the class period, making him a net loser.***

Other courts in addition to courts in the Second Circuit (cited above), also have agreed

that the determination of whether a movant is a net gainer or a net loser must be made through

the *Dura* lens. *See e.g., In re K-V Pharm. Co. Sec. Litig.*, No. 11CV01816 AGF, 2012 WL 1570118, at *3 (E.D. Mo. May 3, 2012) (court rejected the claim that a movant was a net gainer after movant argued in part that the other movant "uses 'simplistic, but unilluminating math' which lumps together Class Period purchases and sales and uses the difference of those totals . . .).

At bottom, Hanna is not a net gainer according to the Supreme Court's damage methodology set forth in *Dura*, and he would not be subject to any unique defense in this case.

### III.    HANNA'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL SHOULD BE APPROVED

As thoroughly briefed in Hanna's opening lead plaintiff motion and opposition papers, the Faruqi Firm possesses extensive experience successfully litigating complex class actions on behalf of plaintiffs, including securities class actions. Hanna Opening Br. 12-15: Hanna Opp. 13-15 The Faruqi Firm has a proven track record of successfully representing its clients in these matters and is nationally recognized for its excellence. Not only does the firm have the experience and expertise necessary to obtain significant successes for its clients, it has a demonstrated commitment to diversity and inclusion that clients and judges increasingly seek from the bar.[4] Class members in securities class actions have diverse backgrounds, and that diversity should be reflected in class counsel. Currently, approximately 40% of the firm's partnership positions are held by women and minorities, and the firm is committed to growing this figure in the coming years. *See* https://www.faruqilaw.com/our-attorneys. The Faruqi Firm is proud to be made up of such a diverse group of legal professionals and strongly believes that its

---

[4]    *See* Anne Cullen, More Judges Are Demanding Diversity Among Class Counsel, Law360 (July 16, 2020), https://www.law360.com/articles/1292926/more-judges-are-demanding-diversity-among-class-counsel; Ralph Chapoco, Calls for Lawyer Diversity Spread to Complex Class Litigation, Bloomberg Law (July 30, 2020), https://www.bloomberglaw.com/document/XA1TPNEG000000?bna_news_filter=social-justice&jcsearch=BNA.

clients are better served because of it.

Further, the Faruqi Firm is a minority-owned and woman-owned[5] law firm, and, as reflected in the Firm's resume, possesses extensive experience successfully litigating complex class actions on behalf of plaintiffs, including securities class actions. *See* Ex. E, Firm Resume of Faruqi & Faruqi, L.L.P.; *see also Reitan v. China Mobile Games & Entm't Grp., Ltd.*, 68 F. Supp. 3d 390, 401 (S.D.N.Y. 2014) (appointing the Faruqi Firm as sole lead counsel and noting: "Faruqi & Faruqi has extensive experience in the area of securities litigation and class actions. The firm's resume indicates that it has litigated more than ten prominent securities class actions since its founding in 1995. Faruqi & Faruqi achieved successful outcomes in many of these cases.").

**CONCLUSION**

For the foregoing reasons, Hanna respectfully requests that the Court: (1) consolidate the above-captioned, related actions; (2) appoint him as Lead Plaintiff; (3) approve his selection of the Faruqi Firm as Lead Counsel for the putative Class; and (4) grant such other relief as the Court may deem just and proper.

Dated: July 30, 2024

Respectfully submitted,

By:     */s/ James M. Wilson, Jr.*
James M. Wilson, Jr.

James M. Wilson, Jr.
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email:   jwilson@faruqilaw.com

---

[5]     *See* Ex. F (certificate from Women's Business Enterprise National Council certifying the Faruqi Firm as a woman-owned business).

10

Robert W. Killorin (*pro hac vice* forthcoming)
**FARUQI & FARUQI, LLP**
3565 Piedmont Road NE Building Four
Suite 380
Atlanta, GA 30305
Telephone: 404-847-0617
Facsimile: 404-506-9534
Email: rkillorin@faruqilaw.com

*Attorneys for [Proposed] Lead Plaintiff Charles Hanna and [Proposed] Lead Counsel for the putative Class*