NEW YORK        CALIFORNIA        GEORGIA        PENNSYLVANIA

August 26, 2024

**VIA CM/ECF**

Honorable Vera M. Scanlon
United States District Court
Eastern District of New York
225 Cadman Plaza East, 1214 South
Brooklyn, New York 11201

> Re:   *Banurs v. Li Auto Inc., et al.*, No. 1:24-cv-03470-VMS
> *Chaudhary v. Li Auto Inc., et al.*, No. 1:24-cv-03725-FB-VMS

Dear Magistrate Judge Scanlon:

We represent lead plaintiff movant Charles Hanna ("Hanna") in the above-referenced matters (the "Actions").  Pursuant to this Court's Order of August 19, 2024, we write in response to the letter motion (ECF No. 25) filed by lead plaintiff movant Low Chig Wee ("Wee") for permission to file a sur-reply to Hanna's reply memorandum of law (ECF No. 24).

Contrary to Wee's arguments, Hanna has not raised "a new method for calculating losses" or "improperly raised" a new argument.  The correct method for calculating the "approximate losses suffered" during the *Banurs* class period, as called for by the fourth *Lax* factor,[1] is not in dispute and Hanna does not seek to alter that in any way.  Also not in dispute is the fact that Hanna suffered the largest amount of approximate losses for the *Banurs* class period under the all-important fourth *Lax* factor.  Hanna's total losses were $299,399 and Wee's total losses were substantially less at $206,669.

Wee freely admitted in his opening brief that the fourth *Lax* factor, *the approximate losses suffered during the class period*, is the most significant factor:

> "While the PSLRA does not specify how we should decide which plaintiff group has the 'largest financial interest' in the relief sought, **most courts simply determine which potential lead plaintiff has suffered the greatest total losses."** *Takara Trust v. Molex*, 229 F.R.D. 577, 579 (N.D. Ill. 2005).  Of the *Lax/Olsten*-styled factors in determining the largest financial interest, the financial loss is the most significant factor.

---

[1] "While the PSLRA does not explain how a court should determine the largest financial interest, one court has recognized four factors: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and **(4) the approximate losses suffered during the class period**.  *See Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997)."  *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y.) (emphasis added), *opinion adhered to on reconsideration sub nom, In re Olsten Corp.*, 181 F.R.D. 218 (E.D.N.Y. 1998).

Wee Opening LP Br. (ECF No. 16-1) at 4-6 (emphasis added).

Wee attempts to conflate *approximate losses suffered* with the separate and distinct concept of *net funds expended* (the less important third *Lax* factor).[2]

Wee has at no time challenged Hanna's approximate losses suffered calculation. Instead, he has argued that Hanna should be disqualified because Hanna was a "net gainer" under the third *Lax* factor. Wee Opp. LP Br. (ECF No. 21) at 7-8.

In responding to Wee's *new* net gainer argument, Hanna simply pointed out in his reply the facts concerning the amounts and timing of his transactions and how those facts dispel Wee's net gainer argument in light of the Supreme Court's decision in *Dura*. As recognized by Judge McMahon in *Khunt v. Alibaba Group Holding Ltd.,* 102 F. Supp. 3d 523 (S.D.N.Y. 2015), in ruling on which lead plaintiff movant had the largest financial interest in that case. "Under *Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005) and its progeny, 'any losses that [a plaintiff] may have incurred before [a defendant's] misconduct was ever disclosed to the public are not recoverable, because those losses cannot be proximately linked to the misconduct at issue in th[e] litigation.'" *Id.* at 531.

Hanna stands by the reasonableness of the numerical assumptions suggested in his reply brief.[3] However, e**ven if one were to assume no additional inflation added to the price of the stock by the second two false statements, as Wee argues, Hanna would still not be a "net gainer**." In that scenario, Hanna would have only broken even, selling 30,000 of fully inflated shares on the first day of the class period, and then purchasing 30,000 more fully inflated shares during the class period and holding them through the end of the class period, suffering the full loss on those shares at the end of the class period. He therefore could not be subject to the argument that he is disqualified pursuant to the "net gainer" exception.

---

[2] Wee cites caselaw regarding net sellers under the second of the *Lax* factors without clarifying that Hanna was not a net seller. Wee does not allege that Hanna was a net seller and there can be no dispute that Hanna was not a net seller.

[3] Contrary to Wee's assertion that it is "well accepted by courts" that at the Lead Plaintiff stage the best that can be done is to assume a constant fraud premium, courts routinely analyze partial disclosures made during the class period and their possible effect on the lead plaintiff analysis. *See, e.g.*, *Foley v. Transocean Ltd.,* 272 F.R.D. 126, 132 (S.D.N.Y. 2011) ("We note in this regard that loss causation 'does not require full disclosure, and can be established by partial disclosure during the class period which causes the price of shares to decline.' *Montoya v. Mamma.com Inc.,* No. 05 Civ. 2483(HB), 2005 WL 1278097 at *2, 2005 U.S. Dist. LEXIS 10224 at *2 (S.D.N.Y. May 31, 2005). We [see] no reason why a net seller who sold all of his shares after the fraud began to be exposed, and was thus legally harmed by the fraud in all of its sales, could not be an adequate lead plaintiff.")



Wee rests his argument on the judicially-created exception to the general rule that the *approximate losses suffered during the class period* is usually dispositive in deciding lead plaintiff contests. The exception, followed by some courts but not all, is based on the less important third *Lax* factor: *net funds expended* during the class period. The "net funds expended" analysis, postulated years before the *Dura* decision, is a very crude tool that looks at purchases and sales during the class period without regard to inflation attributable to the alleged fraud. The net gainer calculation proposed by Wee does not attempt to disentangle daily stock price fluctuations that are unrelated to the actual fraud and instead caused by routine market fluctuations. Therefore, the net funds expended analysis does not take into account the principles elucidated in *Dura* which requires actual loss causation from the fraud as opposed to other market forces. It is now common for Courts to be mindful of *Dura* principles when making comparisons at the lead plaintiff stage. *See Saye v. NIO Inc.,* 2022 WL 17666398, *4 (S.D.N.Y. Dec. 14, 2022); *In re LightInTheBox Holding Co., Ltd. Sec. Litig.*, 2013 WL 6145114, at *3 (S.D.N.Y. Nov. 21, 2013) ("While the *Dura* court addressed a motion to dismiss, the Court's reasoning applies with equal force to a motion to appoint lead counsel.").

*Dura* can be summarized as calling for losses suffered to only be calculable when the loss caused by the fraud is manifested by a stock drop caused by the *revelation* of the fraud. Only investors holding artificially inflated stock at that time have *Dura* losses. Applying the principles of *Dura* to Hanna's transactions as courts in this circuit do at the lead plaintiff stage, it becomes clear that Hanna could not be a net gainer.

An abbreviated chronology and the relevant portion Hanna's PSLRA Certification is set out below. Hanna sold 30,000 previously purchased shares on day one of the *Banurs* class period. The then bought and kept 30,000 shares during the *Banurs* class period, and exited the *Banurs* class period with 30,000 shares purchased during the class period after all three false statements were made. He therefore suffered, under Wee's theory of constant inflation after day one, the full measure of damages on those 30,000 shares purchased during the class period. Hanna also had one in and out transaction during the class period of 10,000 shares which would be a wash because the stock would have been equally inflated at the time of purchase and at the time of sale.

Because Hanna had by far the largest *approximate losses suffered* losses on his purchases of Li Auto stock for the appropriate class period, the *Banurs* class period, and because he is not subject to disqualification because of the "net gainer" exception, Hanna respectfully requests that he be appointed Lead Plaintiff in this case.

## Abbreviated Chronology of Hana's Trades in Li Auto Stock

**Before start of *Banurs* Class Period:** Hanna has accumulated 30,000 shares.

**February 26, 2024:** First day of class period: Hannah sells all 30,000 shares after first of three false statements made.



**February 29, 2024:** Defendants make the second of three false statements.

**March 1, 2024:** Defendants make the third of three false statements.

**March 4, 2024:** Hanna buys 10,000 shares.

**March 6, 2024:** Hanna buys 10,000 and sells 10,000 shares on the same day.

**March 4, 2024:** Hanna buys 10,000 shares.

**March 4, 2024:** Hanna buys 10,000 shares.

**March 21, 2024:** The *Banurs* Class Period ends. Hanna is still holding the 30,000 shares he bought at fully inflated prices during the class period.

**May 20, 2024:** The *Chaudhary* Class Period ends. Hanna is still holding the 30,000 shares he bought at fully inflated prices during the class period.

| Transaction (Purchase or Sale) | Share Type | Trade Date | Quantity | Price Per Share |
|---|---|---|---|---|
| Sold | Common Stock | 2/26/2024 | (30,000) | $41.0500 |
| Purchase | Common Stock | 3/4/2024 | 10,000 | $37.7280 |
| Purchase | Common Stock | 3/6/2024 | 10,000 | $37.7500 |
| Sold | Common Stock | 3/6/2024 | (10,000) | $38.7680 |
| Purchase | Common Stock | 3/7/2024 | 10,000 | $36.4700 |
| Purchase | Common Stock | 3/18/2024 | 10,000 | $33.0000 |

Respectfully submitted,

*James M. Wilson, Jr.*
James M. Wilson, Jr.

cc:   Counsel of Record (by CM/ECF)