# The Rosen Law Firm

## INVESTOR COUNSEL

Jing Chen
jchen@rosenlegal.com

April 17, 2025

**VIA ECF**
Hon. Diane Gujarati, U.S.D.J.
United States District Court
Eastern District of New York
225 Cadman Plaza E.
Brooklyn, NY 11201

Re: *Banurs v. Li Auto Inc., et al., No. 1:24-cv-03470-DG-VMS*

Dear Judge Gujarati:

On behalf of Plaintiffs, we respectfully respond to Defendant Li Auto Inc.'s ("Li Auto") request (Dkt. 33, "Request") for a pre-motion conference concerning its anticipated motion to dismiss the Amended Complaint (Dkt. 30, "Complaint" or "¶__") under Fed. R. Civ. P. 12(b)(6). For the reasons below, the Complaint adequately pleads violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. Li Auto' motion to dismiss will fail.

**FACTS**. Li Auto, a Chinese new energy vehicle ("NEV") manufacturer, derived at least 89% of its monthly sales in 2023 and Q1 2024 from its L series (L7, L8, and L9). ¶¶44,86. This success propelled Li Auto to record profitability, making it China's top-selling NEV maker. ¶40. The Li L7, and the Li L8, described by Defendant Xiang Li ("X. Li") as the "main force vehicle model," ranked first and second, respectively, in sales among mid- to large-size SUVs in China in 2023, regardless of energy source. ¶42. On February 26, 2024, Li Auto issued an optimistic Q1 2024 outlook, projecting strong vehicle deliveries and revenues. ¶49. During the earnings call that day, X. Li reaffirmed this outlook and stated that Li Auto would "continue to accelerate" its supercharging network to reach 2,000 stations by year-end. ¶100. Other individual Defendants echoed these representations. ¶¶104,107,112.[1]

However, these optimistic outlooks were unaccompanied by meaningful cautionary statements identifying two important factors that Defendants knew at the time could cause the Q1 actual results to differ materially from the outlook: (i) despite the L series' significant past and expected contribution to Q1, Li Auto had significantly shifted its resources—including store display space, sales staff, and marketing efforts—away from the high-performing L series towards the untested MEGA vehicle during Q1 and the Class Period. ¶¶59-86. This resource reallocation, including a 40% reduction in L8 display spots, negatively impacted L series demand and could thereby cause the first quarter's overall delivery and revenue to differ materially from the outlook. ¶¶65,66; (ii) Defendants knew the construction of supercharging stations, crucial for the MEGA's success, was not accelerating as represented but proceeding slowly, creating a significant

---

[1] Plaintiffs are in the process of serving Individual Defendants pursuant to the Hague Service Convention.

bottleneck for MEGA sales. ¶¶87-96. This infrastructure delay materially hampered MEGA sales and the overall Q1 sales. ¶87. The truth emerged through a series of events. On March 18, 2024, Bank of America lowered Li Auto's price target due to MEGA's disappointing sales, causing Li Auto's ADS price to fall 12.2%. ¶¶114-15. On March 21, 2024, Li Auto revised down its Q1 outlook for vehicle delivery by 25%, causing a 7.48% drop in Li Auto's ADS price. ¶¶116-19. On May 20, 2024, Li Auto reported that its Q1 financial results suffered a significant decrease as a result of the sluggish first-quarter vehicle deliveries and revealed that "in the past few months," the number of L8 display spots had been reduced by 40%, causing Li Auto's ADS price to fall 12.77%. ¶¶120-23.

**FALSITY**. The Complaint sufficiently pleads that the statements regarding the Q1 outlook were actionable because they were not accompanied by meaningful cautionary statements identifying the two above-stated "important factors" that Defendants had actual knowledge of at the time and which could cause the Q1 actual results to differ materially from the outlook. 15 U.S.C. § 78u–5(c); *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 765–66 (2d Cir. 2010). In its Request, Li Auto points to three risk warnings made even before the alleged omitted important factors transpired, as meaningful cautionary statements. Request at 2. However, neither the warnings about the difficulty in predicting revenue, nor the uncertainty of BEV models' success, are meaningful cautionary language that *specifically* identifies the significant shift in resource allocation away from L series. Similarly, the warning that business sustainability depends on the timely execution of its plan fails to *specifically* identify the slow progress of supercharging station construction, which directly hampered MEGA demand. *Slayton, at 772-73*. (general warning about the high-yield sector failed to warn the "exact risk" caused by the bonds). Notably, Li Auto repeatedly used the same boilerplate cautionary statements in each annual reports,[2] despite its evolving strategy and business changes, showing they were not "tailored to the specific future projection." *Slayton*, at 773. Therefore, they are insufficient to invoke the safe harbor protection under the PSLRA. *See In re Salix Pharmaceuticals, Ltd.*, 14 Civ. 8925 (KMW), 2016 WL 1629341, at *11 (S.D.N.Y. Apr. 22, 2016) ("Defendants cannot escape liability by referring generally to every factor that has ever been mentioned in any one of their public statements or SEC filings, because such a broad disclaimer fails to alert investors to the specific risks they are facing."). Contrary to Li Auto's mischaracterization, the Complaint does not allege that Defendants had a duty to disclose "internal strategies" *per se*. Request at 2. Instead, the Complaint alleges that Defendants had a duty, which they failed to fulfill, to ensure their optimistic Q1 outlook was accompanied by cautionary statements that were "not boilerplate and conveyed substantive information." *Slayton*, 772.

Furthermore, the alleged misrepresentations are not opinions. Even if so, they are actionable under *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175 (2015). The Complaint alleges that Defendants took affirmative steps to reallocate resources in a way that negatively impacted L series sales and possessed real-time information about both the sales figures and the lagging supercharging station construction. ¶¶65-96. Consequently, Defendants' optimistic statements did not "fairly align[] with the information" Defendants possessed at the time. *Id.* at 1329. The alleged misrepresentations were not puffery either (Request

---

[2] *See* 2021 annual report at 13-14, 2022 annual report at 14-15, 2023 annual report at 15, 2024 annual report at 14-15.

2

at 2), because Li Auto shareholders "could reasonably interpret them as material." *Gross v. GFI Grp., Inc.*, 162 F. Supp. 3d 264, 267-68 (S.D.N.Y. 2016). *Meyer v. Organogenesis Holdings Inc.*, 727 F. Supp. 3d 368, 396 (E.D.N.Y. 2024) (Gujarati, J.) is inapposite because here 11 former employees' statements consistently demonstrate a company-wide resource reallocation and a real-time operation monitoring system. ¶¶67-83,90-95. *See In re AppHarvest Sec. Litig.*, 684 F. Supp. 3d 201, 262–63 (S.D.N.Y. 2023) ("[C]courts have found at the pleading stage that the accounts of confidential witnesses support a "[c]ompany-wide inference" where, for example, they "emanate from several geographic areas; (2) span different levels of the Company hierarchy; and (3) remain consistent across different time period."). In fact, Li Auto does not deny such knowledge, nor can it, as it is undeniable that (i) Defendants possessed real-time knowledge of operational metrics; (ii) Defendant X. Li admitted to the resource reallocation; and (iii) Defendant Zou "personally" monitored supercharging station construction. ¶¶112,122.

**SCIENTER**. The Complaint alleges a strong inference of scienter because sufficient facts demonstrate with specificity that Defendants "were aware of undisclosed facts tending to seriously undermine the accuracy of" the Q1 outlook. *Slayton*, at 775. These facts include Defendants' deliberate choice to reallocate resources away from L series, ¶¶65-86, as admitted by Defendant X. Li, ¶¶66,122, Defendants' access to and awareness of real-time operational metrics, ¶¶72,76,78,82-85 and Defendant Zou's "personal[]" monitoring of the slow supercharging station construction ¶¶112. *In re Dentsply Sirona, Inc. Sec. Litig.*, 665 F. Supp. 3d 255, 294 (E.D.N.Y. 2023) (receipt of monthly reports on inventory and sales of each product and the "affirmative steps" established scienter). These sufficiently specific facts distinguish this case from *Diaz v. The Gap, Inc.*, No. 22-CV-07371, ECF No. 42 at 41 (E.D.N.Y. Mar. 31, 2025) (Gujarati, J.) where plaintiffs merely presented vague allegations that senior executives knew one business initiative among many at a subsidiary. Unlike *Diaz* where plaintiffs relied on a single witness's hearsay, Defendants' own admissions, corroborated by the consistent accounts of 11 former employees from various geographic areas and spanning different levels of Li Auto's hierarchy show the company-wide practices. ¶¶66-83,90-95,112,122. This strong inference of scienter holds true even if, as Li Auto incorrectly contends (Request at 3), Plaintiffs have not adequately pleaded "motive." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 325 (2007) ("[T]he absence of a motive allegation is not fatal."). Despite revising its vehicle delivery outlook mid-Class Period (Request at 3), Li Auto maintained its revenue outlook, thus continuing to mislead investors until required to disclose results; nor did Defendants reveal the important factors that would cause the outlook materially different. *Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 202–03 (S.D.N.Y. 2010) (partial disclosures did not reveal the full truth). Plaintiffs' inferences of scienter are "as compelling" as an opposing inference of nonfraudulent intent. *Tellabs*, at 324.

**LOSS CAUSATION**. Notwithstanding Li Auto's vague blanket argument (Request at 3), the Complaint adequately pleads loss causation regarding the three distinct stock price drops because "the subject of" the omitted information "was the cause of the actual loss suffered" from each of the drops. ¶¶114-23; *Suez Equity Invs., L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 95 (2d Cir. 2001).[3] The market reacted negatively and significantly each time to the partial disclosures.

---

[3] Plaintiffs do not currently seek leave to amend but reserve the right to amend in response to any motion to dismiss.

THE ROSEN LAW FIRM, P.A.   275 MADISON AVENUE, 40TH FLOOR   NEW YORK, NY 10016   TEL: (212) 686-1060   FAX: (212) 202-3827

Respectfully submitted,

/s/ Jing Chen
Jing Chen, Esq.

cc:      All counsel via ECF

4