UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
DINESH BANURS, individually and on behalf : of all others similarly situated,

                      Plaintiff,

        - against -                         1:24-cv-03470-DG-VMS

LI AUTO INC., XIANG LI, TIE LI, DONGHUI MA, and LIANGJUN ZOU,     **Oral Argument Requested**

                      Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP

Scott D. Musoff
Robert A. Fumerton
Michael C. Griffin
One Manhattan West
New York, New York 10001
Phone: (212) 735-3000

*Counsel for Defendants*

## **TABLE OF CONTENTS**

    Page

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................................... 1

ARGUMENT ......................................................................................................................................... 2

I.     PLAINTIFFS FAIL TO PLEAD A MATERIAL MISSTATEMENT OR OMISSION ............................................................................................................................. 2

         A.    Plaintiffs Fail to Plead Any Duty to Disclose Resource Allocation ........................ 2

         B.    The Statements Regarding Supercharging Stations Were Not Misleading ............. 4

         C.    The February 2024 Forward-Looking Statements Are Protected by the PSLRA Safe Harbor and Bespeaks Caution Doctrine ............................................. 5

II.    PLAINTIFFS FAIL TO ALLEGE A STRONG INFERENCE OF SCIENTER ................ 7

III.   PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION ..................................................... 10

CONCLUSION .................................................................................................................................... 10

# **TABLE OF AUTHORITIES**

Page(s)

**CASES**

*Abramson v. Newlink Genetics Corp.*,
    965 F.3d 165 (2d Cir. 2020)...................................................................................................10

*In re Aegean Marine Petroleum Network, Inc. Securities Litigation*,
    529 F. Supp. 3d 111 (S.D.N.Y. 2021).........................................................................................7

*In re AppHarvest Securities Litigation*,
    684 F. Supp. 3d 201 (S.D.N.Y. 2023).........................................................................................9

*Asay v. Pinduoduo Inc.*,
    No. 20-1423, 2021 WL 3871269 (2d Cir. Aug. 31, 2021) .........................................................5

*In re Bank of America AIG Disclosure Securities Litigation*,
    980 F. Supp. 2d 564 (S.D.N.Y. 2013), *aff'd*, 566 F. App'x 93 (2d Cir. 2014)................3, 5

*Bettis v. Aixtron SE*,
    No. 16 Civ. 00025 (CM), 2016 WL 7468194 (S.D.N.Y. Dec. 20, 2016)............................4

*Central States, Southeast & Southwest Areas Pension Fund v.*
    *Federal Home Loan Mortgage Corp.*,
    543 F. App'x 72 (2d Cir. 2013) ...............................................................................................10

*Christine Asia Co. v. Ma*,
    718 F. App'x 20 (2d Cir. 2017) ................................................................................................4

*City of Austin Police Retirement System v. Kinross Gold Corp.*,
    957 F. Supp. 2d 277 (S.D.N.Y. 2013).......................................................................................7

*City of Pontiac General Employees' Retirement System v. Lockheed Martin Corp.*,
    875 F. Supp. 2d 359 (S.D.N.Y. 2012).......................................................................................9

*In re Dentsply Sirona, Inc. Securities Litigation*,
    665 F. Supp. 3d 255 (E.D.N.Y. 2023) .......................................................................................4

*Diaz v. Gap, Inc.*,
    No. 22-CV-07371 (DG) (JAM), 2025 WL 1293308 (E.D.N.Y. Mar. 31, 2025).............7, 8

*In re Estée Lauder Co. Securities Litigation*,
    No. 23-cv-10669 (AS), 2025 WL 965686 (S.D.N.Y. Mar. 31, 2025) .................................2

*Freedman v. Weatherford International Ltd.*,
    No. 12 Civ. 2121 LAK, 2013 WL 5299137 (S.D.N.Y. Sept. 20, 2013)............................10

*Freudenberg v. E*Trade Financial Corp.*,
    712 F. Supp. 2d 171 (S.D.N.Y. 2010)..................................................................9, 10

*In re General Electric Co. Securities Litigation*,
    857 F. Supp. 2d 367 (S.D.N.Y. 2012)...........................................................................9

*Gissin v. Endres*,
    739 F. Supp. 2d 488 (S.D.N.Y. 2010)...........................................................................5

*Greco v. Qudian Inc.*,
    No. 1:20-cv-577-GHW, 2022 WL 4226022 (S.D.N.Y. Sept. 13, 2022) ........................7

*Heller v. Goldin Restructuring Fund, L.P.*,
    590 F. Supp. 2d 603 (S.D.N.Y. 2008)...........................................................................8

*Hutchison v. Deutsche Bank Securities Inc.*,
    647 F.3d 479 (2d Cir. 2011)..........................................................................................4

*In re iQIYI, Inc. Securities Litigation*,
    No. 20-CV-01830 (DG) (TAM), 2024 WL 4362509 (E.D.N.Y. Sept. 30, 2024) ...........7, 8

*Kalnit v. Eichler*,
    264 F.3d 131 (2d Cir. 2001)..........................................................................................8

*Lefkowitz v. Synacor, Inc.*,
    No. 18 Civ. 2979 (LGS), 2019 WL 4053956 (S.D.N.Y. Aug. 28, 2019), *aff'd*, 832
    F. App'x 54 (2d Cir. 2020) ...........................................................................................6

*Lickteig v. Cerberus Capital Management, L.P.*,
    No. 1:19-cv-5263-GHW, 2020 WL 1989424 (S.D.N.Y. Apr. 26, 2020) ......................8

*Marcu v. Cheetah Mobile Inc.*,
    No. 18-CV-11184 (JMF), 2020 WL 4016645 (S.D.N.Y. July 16, 2020).......................3

*In re Piedmont Lithium Inc. Securities Litigation*,
    712 F. Supp. 3d 301 (E.D.N.Y. 2024) ..........................................................................8

*Prime Mover Capital Partners L.P. v. Elixir Gaming Technologies, Inc.*,
    548 F. App'x 16 (2d Cir. 2013) .................................................................................10

*Robeco Capital Growth Funds SICAV - Robeco Global Consumer Trends v. Peloton
    Interactive, Inc.*,
    665 F. Supp. 3d 522 (S.D.N.Y. 2023)...........................................................................6

*In re Rockwell Medical, Inc. Securities Litigation*,
    No. 16 Civ. 1691 (RJS), 2018 WL 1725553 (S.D.N.Y. Mar. 30, 2018) ......................4

*In re Salix Pharmeceuticals, Ltd.*,
    No. 14-CV-8925 (KMW), 2016 WL 1629341 (S.D.N.Y Apr. 22, 2016) ..........................6

*San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*,
    732 F. Supp. 3d 300 (S.D.N.Y. 2024)................................................................................7

*Sills v. United Natural Foods, Inc.*,
    No. 23-CV-2364 (JGLC), 2024 WL 4188324 (S.D.N.Y. Sept. 13, 2024) .........................2

*Slayton v. American Express Co.*,
    604 F.3d 758 (2d Cir. 2010)...............................................................................................6

*Stadium Capital LLC v. Co-Diagnostics, Inc.*,
    No. 22-cv-6978 (AS), 2024 WL 456745 (S.D.N.Y. Feb. 5, 2024).....................................9

*In re UBS AG Securities Litigation*,
    No. 07 Civ. 11225(RJS), 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012), *aff'd*, 752
    F.3d 173 (2d Cir. 2014).......................................................................................................7

*In re Virtu Financial, Inc. Securities Litigation*,
    770 F. Supp. 3d 482 (E.D.N.Y. 2025) .......................................................................5, 8, 9

*In re Vivendi, S.A. Securities Litigation*,
    838 F.3d 223 (2d Cir. 2016)..............................................................................................10

*In re Wells Fargo & Co. Securities Litigation*,
    No. 1:20-cv-04494-GHW, 2021 WL 4482102 (S.D.N.Y. Sept. 30, 2021) ...................5, 10

*In re XL Fleet Corp. Securities Litigation*,
    No. 21 Civ. 2002 (LGS), 2022 WL 493629 (S.D.N.Y. Feb. 17, 2022)..............................9

*Zhong Zheng v. Pingtan Marine Enterprise Ltd.*,
    379 F. Supp. 3d 164 (E.D.N.Y. 2019) ..............................................................................10

## PRELIMINARY STATEMENT

The Opposition confirms that Plaintiffs' claims are nothing more than allegations of fraud-by-hindsight following a new product launch that fell short of initial projections. The Company's revised projections were a good faith effort to update its expectations based on changing conditions. None of the challenged statements were false or misleading, even if—as Plaintiffs contend—the Company had reallocated certain resources away from its L series to support the Li MEGA launch and had not accelerated construction of supercharging stations. The SAC fails as a matter of law for multiple independent reasons.[1]

First, Plaintiffs' Opposition concedes that the majority of challenged statements are inactionable, and Plaintiffs otherwise fail to plead any duty to disclose the allegedly omitted information or that further disclosure was necessary to make the challenged statements not misleading. The challenged forward-looking statements, accompanied by meaningful cautionary language, are protected by the PSLRA's safe harbor provision, and Plaintiffs do not even attempt to argue that Defendants acted with actual knowledge of falsity. Second, Plaintiffs fail to plead a "strong inference" of scienter because Defendants' alleged omissions cannot support allegations of recklessness and Plaintiffs assert no more than the impermissible argument that certain Defendants "should have known." Finally, Plaintiffs fail to allege loss causation because no corrective disclosure revealed any previously concealed fact or materialization of any undisclosed risk. As detailed below, the SAC falls far short of pleading securities fraud and should be dismissed in its entirety with prejudice.

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in Defendants' Memorandum of Law in Support of their Motion to Dismiss ("Opening Brief" or "Br."). "Opposition" or "Opp." refers to Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss. All citations and internal quotation marks are omitted, and all emphases in quotations are added, unless otherwise indicated.

# ARGUMENT

## I. PLAINTIFFS FAIL TO PLEAD A MATERIAL MISSTATEMENT OR OMISSION

### A. Plaintiffs Fail to Plead Any Duty to Disclose Resource Allocation

Plaintiffs' claims based on the alleged omission of a reallocation of sales resources all fail because Plaintiffs do not plead that Defendants had any duty to disclose such information. Where, as here, Plaintiffs do not contend any statement was false, a duty to disclose is triggered only if the challenged statements were misleading "half-truths." (Opp. at 9.) They were not.

First, as to the initial projections and related statements on February 26, 2024, Plaintiffs do not even try to argue these were half-truths. Nor could they, given the statements do not mention resource allocation or marketing strategies. Second, Plaintiffs do not dispute that the disclosure of February delivery results on March 1, 2024, was an accurate statement of historical data. Their unsupported assertion that statements about "reasons for sales underperformance triggered a duty to disclose the full truth" (*id.* at 2) adds nothing. The May 1 statement contained no discussion of "underperformance"; it highlighted that February sales were up about 22% year-over-year, despite headwinds that could have decreased sales.[2] (Pls.' Ex. 1 at 4.) While disclosures could be actionable if the source of success was put at issue, "by, for instance, touting some legitimate competitive advantage or specifically denying wrongdoing," disclosures that do "nothing more than" state "statistical facts" are inactionable where, as here, there is no dispute that such facts are accurate. *Marcu v. Cheetah Mobile Inc.*, 2020 WL 4016645, at *5 (S.D.N.Y. July 16, 2020).

---

[2] Plaintiffs' cases are inapposite. *See Sills v. United Nat. Foods, Inc.*, 2024 WL 4188324, at *8 (S.D.N.Y. Sept. 13, 2024) (defendant spoke on profit margins but "failed to disclose . . . a significant and aberrational driver"); *In re Estée Lauder Co. Sec. Litig.*, 2025 WL 965686, at *3 (S.D.N.Y. Mar. 31, 2025) (company disclosed legal reasons for success but withheld other "illegal or improper" reasons). Indeed, like the March 1 statement here reported accurate sales results despite certain headwinds, *Estée Lauder* dismissed as inactionable a nearly identical statement that reported a sales increase "despite ongoing travel restrictions." *Id.* at *2.

2

<u>Finally</u>, Plaintiffs cannot articulate how omitting the alleged resource reallocation rendered the March 21, 2024 press release lowering projections misleading. Plaintiffs claim Defendants "did not tell the whole truth" about the reasons for the lowered projections as they disclosed the "mis-paced MEGA strategy" but omitted "that the L Series resources reduction was a 'fundamental cause' of Li Auto's poor sales," which they claim Xiang Li admitted in an internal letter the same day. (Opp. at 10-11.) But Plaintiffs' mischaracterization of the resource issue as a "fundamental cause" ignores the plain language of the letter, which clearly states that the "fundamental cause" is the "MEGA's development pace" and "our misjudgment of the strategic pace for pure electric vehicles." (Pls.' Ex. 2 at 2.) The resource issue is discussed merely as an example of how the mis-paced strategy impacted sales—i.e., an elaboration of a disclosed fact, not an omission of a separate, material one. (*See id.* ("The confusion in Li Auto MEGA's development pace **also** significantly reduced the sales team's time and energy devoted to serving L series customers.").)

It is well-settled that "a corporation is not required to reveal all facts on a subject just because it reveals a single fact." *In re Bank of Am. AIG Disclosure Sec. Litig.*, 980 F. Supp. 2d 564, 581-82 (S.D.N.Y. 2013), *aff'd*, 566 F. App'x 93 (2d Cir. 2014). Comparing the March 21 press release with the letter, Plaintiffs argue "[t]he admission of misjudging MEGA's market fundamentally differs from the self-inflicted L Series resource cut" (Opp. at 11), but fail to articulate why or how that is so. Both statements are admissions of a mis-paced strategy relating to the Li MEGA rollout. Both acknowledge the so-called "self-inflicted" nature of the issue, since the press release candidly "acknowledge[d]" that "[w]e *planned operations* [] as if the model had already entered the 1-to[]-10 scaling phase." (SAC ¶ 141.) And both acknowledged the Company would need to continue to update its guidance and operational strategy. Indeed, Plaintiffs admit

3

the March 21 press release was "nearly identical" to an alleged internal letter from Xiang Li published the same day, "except for the mention of the L series resource cuts."[3] (Opp. at 2.)

Plaintiffs' argument that Li Auto's share price dropped after the May 20, 2024 disclosure of the 40% reduction in L8 display space (*id.* at 11-12) adds nothing.[4] To the extent Plaintiffs argue this confirms the market viewed this information as material (*id.*), there is no affirmative duty to disclose "any and all material information." *In re Rockwell Med., Inc. Sec. Litig.*, 2018 WL 1725553, at *10 (S.D.N.Y. Mar. 30, 2018).[5]

### B. The Statements Regarding Supercharging Stations Were Not Misleading

Plaintiffs cannot demonstrate these statements were misleading because the Company regularly updated the public on the progress of completed construction. (Br. at 10-11.) Contrary to Plaintiffs' assertions (Opp. at 14), Li Auto disclosed the number of charging stations throughout the Class Period in monthly delivery updates and earnings calls.[6] Because the number of

---

[3] *In re Dentsply Sirona, Inc. Sec. Litig.*, 665 F. Supp. 3d 255 (E.D.N.Y. 2023) is inapposite, as here, Plaintiffs fail to allege **any** reason the statement "would have misled a reasonable [investor]." *Id.* at 287. Plaintiffs' assertion that the March 21 press release did not put investors on notice of the resource issue (Opp. at 12-13) is irrelevant as it is Plaintiffs' burden to plead that Defendants had any duty to disclose the resource allocation.

[4] This stock drop is insufficient to plead materiality because on the same day Li Auto also disclosed "a significant decrease" in key operational and financial metrics and that it would not "launch new pure electric vehicles in 2024." (SAC ¶¶ 152-53.) *See Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 490 (2d Cir. 2011) (no materiality based on 18% stock drop after press release "loaded with news . . . any item of which could have caused [company's] stock price to drop"). *Christine Asia Co. v. Ma*, 718 F. App'x 20 (2d Cir. 2017) is not to the contrary because the 13% stock drop followed the revelation of a single omission. *Id.* at 22-23.

[5] In any event, the internal letter containing the allegedly omitted information was disclosed on the same day in an article published by CNEV. (Ex. C.) Plaintiffs dismiss this outlet as an "obscure publication" (Opp. at 12), but there is no duty to disclose information available to the public in "industry and region-specific publications." *Bettis v. Aixtron SE*, 2016 WL 7468194, at *12 (S.D.N.Y. Dec. 20, 2016).

[6] Specifically, Li Auto disclosed the number of completed supercharging stations on the February 26, 2024 earnings call and in the April 1, 2024 and May 1, 2024 delivery updates. Plaintiffs' assertion that these public disclosures lack "intensity and credibility" required to show public knowledge is irrelevant where, as here, "plaintiffs do not allege any affirmative misstatement" that "had to be corrected." *In re Bank of Am. AIG*, 980 F. Supp. 2d at 577.

4

completed supercharging stations was disclosed throughout the Class Period, investors were free to "evaluate the defendant's statements" and assess for themselves Li Auto's progress. *In re Bank of Am. AIG*, 980 F. Supp. 2d at 582; *see also Asay v. Pinduoduo Inc.*, 2021 WL 3871269, at *4 (2d Cir. Aug. 31, 2021) (no falsity where "investor could have looked at the data provided").

Moreover, Plaintiffs' attempts to strip statements of their self-evidently forward-looking status cannot be squared with the text. Plaintiffs mischaracterize Defendants' statements regarding charging stations by looking only at the word "accelerate" and ignoring the temporal anchors embedded in their statements.[7] But the February 26 forward-looking statements "cannot meaningfully be distinguished from the future projection of which they are a part." *Gissin v. Endres*, 739 F. Supp. 2d 488, 505 (S.D.N.Y. 2010).[8] Thus, they are protected by the safe harbor, as the Opposition does not dispute they were accompanied by appropriate cautionary language, and Plaintiffs fail to plead any Defendant had actual knowledge that projections were false.

### C. The February 2024 Forward-Looking Statements Are Protected by the PSLRA Safe Harbor and Bespeaks Caution Doctrine

Plaintiffs' implicit concession that Defendants had no duty to disclose the alleged resource reallocation in the February 26, 2024 statements is sufficient to warrant dismissal of those claims. (*Supra* § I.A.) In any event, these statements are protected under the PSLRA safe harbor. First, Plaintiffs' contention that the cautionary language accompanying the February 26 forward-looking

---

[7] Plaintiffs' "deceleration" calculations comparing five-month intervals (Opp. at 14) are meaningless because the statements set a year-end goal. (SAC ¶¶ 122, 137.) Moreover, Plaintiffs only consider the number of newly completed stations each month (Opp. at 14), ignoring that "acceleration" can be measured in a number of ways (e.g., contracts signed, land bought, workers hired and materials purchased).

[8] Plaintiffs' own case confirms that "courts have consistently found that . . . the verb *continue* does not" strip a statement of forward-looking status. *In re Virtu Fin., Inc. Sec. Litig.*, 770 F. Supp. 3d 482, 515 (E.D.N.Y. 2025). *In re Wells Fargo & Co. Sec. Litig.*, 2021 WL 4482102 (S.D.N.Y. Sept. 30, 2021) is not to the contrary because the court determined the entire sentence - starting with "*we're in the midst* of implementing that" - was a description of "current or past progress." *Id.* at *18.

5

statements was not "company-specific" cannot be squared with the disclosures themselves. (Opp. at 15.) Far from boilerplate language, Li Auto included specific risks related to its "limited automobile manufacturing experience" and details regarding demand for its specific products including "NEVs," "EREVs and BEVs." (Ex. B at 15, 19.) *See Robeco Cap. Growth Funds SICAV - Robeco Glob. Consumer Trends v. Peloton Interactive, Inc.*, 665 F. Supp. 3d 522, 539 (S.D.N.Y. 2023) ("the market for our products and services is still in the early stages of growth" and "we have a limited operating history" are company-specific). Plaintiffs' claim that Li Auto repeated some cautionary language in its annual reports (Opp. at 16) does not render its warnings boilerplate,[9] as Li Auto also disclosed *product*-specific risks, including in the lead-up to the Li MEGA. (Ex. B at 15.) Even if Li Auto did not warn of precise risks that had yet to occur (Opp. at 16), "a defendant need not include the particular factor that ultimately causes its projection not to come true." *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 773 (2d Cir. 2010).

Second, Plaintiffs fail to allege that Xiang Li, Tie Li and Zou had actual knowledge that the February 26 outlook was misleading because Plaintiffs cannot plead "Defendants did not actually believe their [] projections," as is required in this Circuit. *Lefkowitz v. Synacor, Inc.*, 2019 WL 4053956, at *7 (S.D.N.Y. Aug. 28, 2019), *aff'd*, 832 F. App'x 54 (2d Cir. 2020).[10] Plaintiffs insufficiently attempt to allege "Defendants' awareness" of different aspects of Li Auto's business, not an awareness that the projections were false or unattainable. (Opp. at 21-22.) Plaintiffs endeavor to rely on the core operations doctrine, but Plaintiffs do not cite, and Defendants are

---

[9] *In re Salix Pharms., Ltd.*, 2016 WL 1629341 (S.D.N.Y Apr. 22, 2016) is inapposite because the cautions were "word-for-word the same . . . from quarter to quarter and from year to year" despite "changing circumstances and risks." *Id.* at *12.

[10] Without explanation, Plaintiffs claim Defendants were "forced" to restate the February 26 projections by Bank of America's lowered delivery estimate. (Opp. at 23.) But it was lowered because of "MEGA's weak orders" (*id.*), which is irrelevant to Plaintiffs' allegation that Defendants knew that marketing decisions harmed L series sales.

6

unaware of, any case holding that core operations can support actual knowledge under the safe harbor.[11] (*Id.* at 22.) Since the doctrine "cannot establish scienter independently," *Diaz v. Gap, Inc.*, 2025 WL 1293308, at *21 (E.D.N.Y. Mar. 31, 2025) (Gujarati, J.), Plaintiffs cannot rely on it to establish actual knowledge under the heightened standard for forward-looking statements.

## II.  PLAINTIFFS FAIL TO ALLEGE A STRONG INFERENCE OF SCIENTER

The Opposition illustrates that Plaintiffs fail to allege scienter with particularity. As a threshold matter, the Opposition conflates all Defendants together, but "plaintiffs must plead circumstances providing a factual basis for scienter for each defendant; guilt by association is impermissible." *Greco v. Qudian Inc.*, 2022 WL 4226022, at *25 (S.D.N.Y. Sept. 13, 2022).[12]

The Opposition concedes that Plaintiffs do not even try to plead motive. (Opp. at 18.) They fail to plead recklessness for several reasons. Even at face value, Plaintiffs' recklessness allegations amount to nothing more than fraud-by-hindsight. *See In re iQIYI, Inc. Sec. Litig.*, 2024 WL 4362509, at *16 (E.D.N.Y. Sept. 30, 2024) (Gujarati, J.). First, Plaintiffs argue Zou and Xiang Li recklessly made statements on February 26 about supercharging expansion because "Defendants conceded there was a 'slow start in January and February' for supercharging station construction." (Opp. at 20.) Defendants made no such concession. Plaintiffs mischaracterize defense counsel's statement at the pre-motion conference that "***Plaintiffs claim*** that because things got off to what

---

[11] Plaintiffs' cases are inapposite as the claims are not analyzed as forward-looking statements. *See San Antonio Fire & Police Pension Fund v. Dentsply Sirona Inc.*, 732 F. Supp. 3d 300, 315 (S.D.N.Y. 2024) ("[A]lthough some of the statements might be protected as forward-looking, Defendants did not make that argument."); *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 173 (S.D.N.Y. 2021) (statements were "retrospective").

[12] Plaintiffs erroneously claim "scienter is pled for all Defendants" because they participated in the same earnings call. (Opp. at 21.) Plaintiffs' case is inapposite as it concerns attributing a corporation's published statement to the corporate insider involved in "drafting, producing, reviewing and/or disseminating" it. *City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, 957 F. Supp. 2d 277, 309 (S.D.N.Y. 2013). Plaintiffs make no scienter arguments specific to Ma, and thus their claims against him fail. *See In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *11 (S.D.N.Y. Sept. 28, 2012), *aff'd*, 752 F.3d 173 (2d Cir. 2014).

7

***they've characterized*** as a slow start in January and February, the company must have known in February that there's no way it could have possibly hit its target that it set for year-end." (Pls.' Ex. 4 at 7.) This scienter argument hinges on a nonexistent concession, and those allegations fail.[13]

Second, Plaintiffs contend that the March 21 internal letter shows that Xiang Li's March 1 and March 21 statements were reckless.[14] (Opp. at 17-20.) But, as above (*supra* § I.A), there was no duty to disclose the observation about L8 display spaces. *See Kalnit v. Eichler*, 264 F.3d 131, 143 (2d Cir. 2001) ("[Where] the duty to disclose . . . was not so clear . . . defendants' recklessness cannot be inferred from the failure to disclose.").[15] The Opposition tacitly concedes that the SAC does not allege "a specific report contradicting Defendants' public statements" (Opp. at 17-18)— as required. *See In re iQIYI*, 2024 WL 4362509, at *17. Plaintiffs do not allege contradictions between the March press releases and the March 21 letter.[16] (*See supra* at p.3.)

Likewise, Plaintiffs' allegations of "circumstantial evidence" of Xiang Li and Tie Li's "access to information about the L series resource reduction and its impact" fall flat. (Opp. at 19-20.) Across these six pieces of "evidence," Plaintiffs either (1) conflate alleged knowledge that

---

[13] To the extent Plaintiffs rely on FE allegations, no FE "had direct discussions with or attended any meeting with" Zou or Xiang Li. *Diaz*, 2025 WL 1293308, at *20 n.16.

[14] That Tie Li "signed" the March 1 and 21 statements "does not salvage Plaintiff[s'] deficient allegations of scienter as to him." *In re Piedmont Lithium Inc. Sec. Litig.*, 712 F. Supp. 3d 301, 318 (E.D.N.Y. 2024). Further, Plaintiffs' allegations of Xiang Li's scienter based on his letter cannot be imputed to Tie Li, Ma or Zou. *See id.* (rejecting "group pleading allegations of . . . knowledge and access to information, without any differentiation between" defendants).

[15] Plaintiffs also argue that remarks about L8 display spaces in the March 21 letter and during the May 20 earnings call are "subsequent" developments that "constitute circumstantial evidence of an intent to deceive" (Opp. at 18), but Plaintiffs' case is inapposite because they conceded Defendants had no motive. *See Lickteig v. Cerberus Cap. Mgmt., L.P.*, 2020 WL 1989424, at *13 (S.D.N.Y. Apr. 26, 2020) (defendants who subsequently stated higher multiple of EBITDA had "motive and opportunity to commit fraud" by lowballing original estimate).

[16] Plaintiffs' cases are inapposite. *See Virtu*, 770 F. Supp. 3d at 526-27 (company cautioned about potential failure to protect information where it had already failed to do so); *Heller v. Goldin Restructuring Fund, L.P.*, 590 F. Supp. 2d 603, 622 (S.D.N.Y. 2008) (statement that investor had committed $40 million was "explicitly contradicted" as investor did not exist).

8

the resource shift occurred with knowledge of its purported impact on L series sales or (2) impermissibly argue that Xiang Li and Tie Li must have known of the purported impact.[17] The FEs merely allege that sales resources were directed towards the Li MEGA beginning in January or February and senior management was aware.[18] (*Id.*; *see* Br. at 21.) Plaintiffs also argue that the "specificity of Defendants' statements" provides circumstantial evidence that Xiang Li and Tie Li received information about underperformance, but in each of their supporting cases, unlike here, the specific source of the information was also pled.[19]

Finally, the Opposition highlights how far from cogent and compelling Plaintiffs' theory of fraudulent intent is. Plaintiffs contend that Defendants pointlessly harmed sales through "self-inflicted L series resource cuts" (Opp. at 23), while disputing that Defendants "expected this reallocation to benefit sales overall." (*Id.* at 20.) That Xiang Li's letter included a single sentence about L8 display spaces does not establish a cogent and compelling inference of fraudulent intent.[20]

---

[17] *Stadium Cap. LLC v. Co-Diagnostics, Inc.* is inapplicable because defendants stated they monitored demand daily then misrepresented that demand. 2024 WL 456745, at *5 (S.D.N.Y. Feb. 5, 2024).

[18] Plaintiffs' own cases illustrate how FE allegations here are lacking. *See e.g.*, *In re AppHarvest Sec. Litig.*, 684 F. Supp. 3d 201, 243 (S.D.N.Y. 2023) (rejecting "conclusory allegations that *everyone was aware* of specific information"); *Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 196 (S.D.N.Y. 2010) (crediting allegations where FEs "had first-hand interactions" with defendants); *In re XL Fleet Corp. Sec. Litig.*, 2022 WL 493629, at *5 (S.D.N.Y. Feb. 17, 2022) (crediting allegations corroborated by third-party report).

[19] *See City of Pontiac Gen. Emps.' Ret. Sys. v. Lockheed Martin Corp.*, 875 F. Supp. 2d 359, 372 (S.D.N.Y. 2012) (defendants received information directly from another defendant with motive and opportunity to commit fraud); *see also In re Gen. Elec. Co. Sec. Litig.*, 857 F. Supp. 2d 367, 395 (S.D.N.Y. 2012) (defendant "made detailed reports" about data he received).

[20] Plaintiffs' own cases illustrate that much more is needed to establish scienter. *See Virtu*, 770 F. Supp. 3d at 494 (fraudulent intent when defendant "went on a campaign to address . . . protection of client information"); *In re Wells Fargo*, 2021 WL 4482102, at *28 (S.D.N.Y. Sept. 30, 2021) (defendant "intimately aware" of issue, "spoke to regulators every single day" and "submit[ted] written progress reports"); *Freedman v. Weatherford Int'l Ltd.*, 2013 WL 5299137, at *6 (S.D.N.Y. Sept. 20, 2013) (reckless disregard of high risk of inaccuracy when defendants "issue[d] restated financials" three times in 16 months).

### III. PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION

Finally, the Opposition confirms that Plaintiffs have not adequately pled loss causation. Plaintiffs failed to identify a single false statement in need of correction (*supra* § I), and thus none of the three purported corrective disclosures "reveal[ed] to the market the falsity" of any prior statements. *Prime Mover Cap. Partners L.P. v. Elixir Gaming Techs., Inc.*, 548 F. App'x 16, 17 (2d Cir. 2013). First, Plaintiffs contend that Bank of America's March 18, 2024 report revealed that there had been "lighter-than-expected MEGA orders" caused by the two allegedly omitted facts (neither of which the report mentioned). (Opp. at 24.) But Plaintiffs allege shifting resources caused a dip in *L series* sales, not MEGA sales, and no proximate causation is even alleged.[21] *See Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72, 75 (2d Cir. 2013) (corrective disclosures must "reveal some then-undisclosed *fact*" related to misrepresentations). Second, Plaintiffs maintain that the May 20, 2024 press release and earnings call were corrective disclosures because they "revealed" the display reduction and supercharging infrastructure.[22] (Opp. at 25.) However, as above (*supra* §§ I.A-B), the May 20 statements did not "demonstrate any new information" and thus fail to show loss causation. *Zhong Zheng v. Pingtan Marine Enter. Ltd.*, 379 F. Supp. 3d 164, 178 (E.D.N.Y. 2019).[23]

### **CONCLUSION**

The Second Amended Complaint should be dismissed in its entirety with prejudice.

---

[21] Plaintiffs' cases require proximate causation. *Abramson v. Newlink Genetics Corp.*, 965 F.3d 165, 180 (2d Cir. 2020) (misstatements "foreseeably caused" subject of corrective disclosure); *Freudenberg*, 712 F. Supp. 2d at 202 (truth about company's underlying condition caused loss); *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 261 (2d Cir. 2016) ("sufficiently direct" relationship necessary between loss and alleged misstatement).

[22] Xiang Li did not "abandon[] BEV launches due to insufficient supercharging stations" (Opp. at 14), but stated that Li Auto would release a new "premium BEV SUV" in the first half of 2025 when its charging stations reached a similar level as its competitor. (Ex. D at 9.)

[23] Because Plaintiffs fail to plead a § 10(b) violation, their claim under § 20(a) also fails.

Dated: New York, New York
       October 9, 2025

                                      Respectfully submitted,

                                      /s/ *Michael C. Griffin*
                                      SKADDEN, ARPS, SLATE,
                                          MEAGHER & FLOM LLP
                                      Scott D. Musoff
                                      Robert A. Fumerton
                                      Michael C. Griffin
                                      One Manhattan West
                                      New York, New York 10001
                                      Phone: (212) 735-3000
                                      Fax:   (212) 735-2000
                                      scott.musoff@skadden.com
                                      robert.fumerton@skadden.com
                                      michael.griffin@skadden.com

                                      *Counsel for Defendants*